## J. D. Hughes Lumber Co. v. G. M. & J. B. Knuckles.

(Decided January 30, 1912.)

### Appeal from Clay Circuit Court.

Contracts—Sale of Logs—Instructions—On the trial of this case involving a contract for the sale of logs to be cut from timber on Red Bird creek, or its tributaries, in Clay county, Ky., the court instructed the jury as follows: "If you find for the plaintiffs you will give them all the poplar, ash and linn which you may believe from the evidence they would have delivered over the Bowling Bar by July, 1905, the difference between what it would

have cost them to pay for such timber, and cut, haul, float and deliver same over said bar by said date and the contract price which plaintiffs were to receive for said timber at the point of delivery aforesaid, and in addition thereto you will give to them all the poplar, ash and cucumber logs which you believe from the evidence they could and would have delivered over said bar within a reasonable time after July, 1905, exercising ordinary care and prosecuting said work with reasonable diligence, the difference between what it would have cost them to pay for such timber, and cut, saw, haul and float same over said bar, and 90 per cent. of the original contract price for such timber, but in all you will find no greater sum than $14,925.00, the amount claimed in the amended petition filed at this term of the court." Held, this method of ascertaining the amount of recovery in cases similar to the one at bar has often been approved by this court.

W. W. RAWLINGS, HAZELRIGG & HAZELRIGG for appellant.

H. C. FAULKNER, W. E. FAULKNER, H. C. FAULKNER, JR. for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellant was at one time a corporation owned by four persons, and R. Carnahan, who drafted the contract hereinafter copied, owned one-fourth of its stock. The corporation was dissolved, however, before the contract was entered into but the same four persons still owned the property as partners, each owning a fourth interest. On January 15, 1904, G. M. Knuckles, representing himself and his brother, and R. Carnahan, representing himself and partners, entered into a written contract which is as follows:

"This contract made and entered into, between G. M. and J. B. Knuckles, of Knuckles, Ky., party of the first part and The J. D. Hughes Lumber Company, of High Bridge, Ky., of the second part.
Witnesseth:

"That for and in consideration of covenants hereinafter expressed and payments to be made as herein set forth.

"The party of the first part has this day sold to second party five to ten thousand poplar, ash, cucumber and linn saw logs 14 in. and up, said logs to be put in on Red Bird Creek or its tributaries and delivered below J. S. Bowling Bar.

"Second party agrees to pay first party ($15.00) Fifteen Dollars per thousand feet for all the poplar, ash

and cucumber logs that are 20 inches and up that are reasonably smooth classed as a No. 1 log, and ($10.00) Ten Dollars per M. feet for all No. 2 logs of above kind that are over 20 inches and all logs under 20 inches down to 14 inches and ($8.50) Eight and 50-100 dollars per m. feet for the linn.

"Second party agrees to make measurement after logs are put on floating water or in good splash dams as often as may be necessary from Oct. 1st, 1904, to March 1, 1905, and pay 60 per cent. of total price after they are measured and branded and pay balance on such logs as have been delivered below J. S. Bowling Bar, below Little Creek, by July 1, 1905. And all logs not delivered below said bar by that time, first party is to be chargeable with a discount of 10 per cent. on all poplar logs undelivered to said point of delivery and all logs not delivered to point of delivery by July, 1905, they shall be charged back to first party and second party's release brand to be put on them.

"First party agrees to paint the logs with 3 H on each end and furnish men to brand said logs with hammer brand.

"All logs sold under this contract are to be cut from green, sound standing timber and all doty, hollow and wind-shaken logs are to be measured only for the merchantable lumber contained in such logs.

"This January 15, 1904.
                    "G. M. KNUCKLES,
                    "J. B. KNUCKLES,
                    "THE J. D. HUGHES LUMBER CO.,
                              "By R. CARNAHAN, JR."

It is agreed that the parties had the terms of this contract under consideration for some time before it was reduced to writing.

Appellees' testimony tends to show that before the contract was reduced to writing, they had contracted for more than enough virgin forest timber above the mouth of Upper Bear Creek, on Red Bird Creek and its tributaries, to fill the contract; that after the contract was reduced to writing they purchased cattle, wagons, chains and all other necessaries and hired men, other teams and wagons more than sufficient to cut, haul and place the timber in the creeks to be floated below J. S. Bowling Bar within the time named in the contract; that they had cut and caused to be cut from the lands mentioned,

over four thousand logs by the fall of 1904, and had placed two thousand or twenty-five hundred of them in Red Bird Creek and Phillips Fork, below a splash dam, ready to be measured and accepted by appellant, at which time, according to the contract, appellees were to receive 60 per cent. of the value of the logs accepted.

Oneida, the place of Carnahan's then residence, was several miles (actual distance not given) from where the logs were, and appellees notified Carnahan two or three times that they were ready to deliver the two thousand or twenty-five hundred logs for his inspection and acceptance. The first notice was given about October 1, 1904, and the last one was given by registered letter, in answer to which Carnahan wrote G. M. Knuckles, one of appellees, the following letter:

"Oneida, Ky., Dec. 13, 1904.

"Knuckles, Ky.
"Mr. G. M. Knuckles,
"Dear Sir:

"I am reliably informed, that at the time you made a contract for poplar logs with me, that you did not have the 1,500 acres of virgin forest, which you represented yourself to have, which was the foundation of our contract, but by mistake I failed to put in said contract that these logs were to be mostly cut off of your tract, consequently I will not measure any logs under that contract.

"If you will come to Oneida, Ky., on the 26th in person, and we can agree on what logs you have, I may be able to take them up for you.
Yours truly,
"R. CARNAHAN, JR."

Carnahan never did go to see appellees or to investigate for himself the facts with reference to appellees' conduct in getting the logs out, but it appears that he sent, some time prior to writing this letter, one Helton and it was from him and one or two other persons from whom J. B. Knuckles had contracted for some timber below the mouth of Upper Bear Creek, he received the information referred to in his letter. Appellant never did go to the point named to receive the logs or any part of them, and they claim they were excused from doing so because appellees violated the contract, first, in trying to deliver logs that were not cut from virgin forest but from forest which had been cut over; second, some

of the logs were cut from trees which had been blown down, and, third, the splash dam was not sufficient to float the logs out.

Appellees instituted this action January 17, 1907, to recover damages for the violation of the contract. They claim as damages the difference between the contract price they were to receive and the actual cost they would have incurred in fulfilling their part of the contract. Appellant answered and filed a counter-claim asking a reformation of the written contract. The case was transferred to equity on motion of appellant, for the purpose of having the court reform the contract. The lower court did reform the contract in two particulars; first, the trees were to be cut above the mouth of Upper Bear Creek; second, they should all be cut from virgin forest except a small amount which appellees were allowed to cut from around and near to their store. (Knuckles, &c. v. Hughes Lumber Co., 116 S. W., 1193.) The case was then transferred back to the ordinary docket to determine the other issues. Appellants alleged in their counterclaim that if appellees had carried out the contract, the logs that would have been delivered below J. S. Bowling Bar would have been worth something over $11,000 more than they had agreed to pay for them and that they were therefore damaged to that extent.

It seems appellants were laboring under the impression that appellees could not furnish the number of logs called for in the contract, from virgin forest. The testimony shows that the logs purchased below Upper Bear Creek were purchased by J. B. Knuckles, who was not present when the contract was agreed upon and, therefore, knew nothing about any of the conditions being left out of the written contract until it was reformed which was after he had purchased that timber. Besides, if this timber was not according to the contract, appellant did not have to accept and pay for it. The testimony shows, however, the names of the persons from whom appellees purchased virgin forest timber, the number of trees and logs purchased, and that there was more than a sufficient amount of it above the mouth of Upper Bear Creek to fulfill their contract. Helton testified that when he went to the logging camp of appellees he found they had cut four or five hundred logs from the land of T. J. Asher out of trees which had been blown down in the spring of 1904, and that they had also cut some logs from forest which had been cut over. The last named logs were cut

around appellees' store in accordance with one of the provisions of the reformed contract. It is true appellees cut four or five hundred logs from down timber on T. J. Asher's land, but the testimony shows that the trees had been recently blown down; that the logs were fine ones, 75 per cent. of them being twenty inches and over in diameter; that they were all green except three, and they were sound. While it is true the contract called for logs cut from standing trees, we presume, however, this was put into the contract to make sure of getting green logs, therefore, as all the testimony shows that these logs were cut from trees recently blown down and were as good as those cut from trees felled by appellees, we are inclined to think they complied with the meaning of the contract. At all events, if they did not comply with the contract, appellants did not have to receive them, and appellees had more than enough timber without these logs, to fill their contract. Helton made no effort to see appellees or any timber or logs other than those cut around appellees' store and from T. J. Asher's land, in order to ascertain how much virgin forest timber appellees had, and it was from this limited information that he made his report to appellants, and they contented themselves with it and made no attempt to further investigate for the purpose of finding out the true state of affairs, but refused to measure, receive and pay for the logs in accordance with the contract. According to appellees' testimony appellants could have then ascertained that they had more than enough virgin forest timber to fulfill their contract. Their evidence shows that they had enough timber to make eleven thousand logs which would meet every requirement of the contract and that they were prepared and able to deliver them below the J. S. Bowling Bar within the time specified in the writing; that at the time they asked appellants to receive and pay for the first lot they had placed in the creeks about twenty-five hundred logs which were of the kind described in the contract, and that they had others already cut in the woods which also fulfilled the requirements of the contract. Appellees say that they obtained more timber than was necessary to fill their contract, because shortly after the contract was entered into they received information from Carnahan, representative of appellant, that they need not confine themselves to the number of logs named in the contract; that they would take, at the price named, all they could get out. Appellees testified and introduced

many witnesses who had many years of experience in the logging business, who testified, in effect, that the price paid for the timber, the cutting, hauling and floating of it below J. S. Bowling Bar, would not have cost them over $7.50 or $8 per thousand feet for the first class logs and $6.50 or $7 per thousand feet for the second class logs; that they were able, ready and would have gotten out, within the time named, all the timber called for by the contract, which shows that their profits would have been twice as much as they recovered. The profits on five thousand logs would have been more than $7,000, but they recovered only $5,000.

The court's instructions properly construed the law of the contract and told the jury that, under certain conditions, they would find for appellees and under certain other conditions they would find for appellant on its counterclaim. There is no complaint in the briefs of counsel as to any of the instructions except number 4, which states the criterion of recovery. It is as follows:

"If the jury find for plaintiffs under instruction No. 2, above, then you will give to them on all the poplar, ash, cucumber and linn logs which you may believe from the evidence they would have delivered over the Son Bowling Bar by July 1st, 1905, the difference between what it would have cost them to pay for such timber and cut, saw, haul, float and deliver same over the Son Bowling Bar by July 1st, 1905, and the contract price which plaintiffs were to receive for said timber at the point of delivery aforesaid; and in addition thereto, you will give to them on all the poplar, ash and cucumber logs which you may believe from the evidence they could and would have delivered over the Son Bowling Bar within a reasonable time after July 1st, 1905, exercising ordinary care and prosecuting said work with reasonable diligence, the difference between what it would have cost them to pay for such timber and cut, saw, haul, float and deliver same over Son Bowling Bar and 90 per cent. of the original contract price for such timber, but in all, you will find no greater sum than $14,925, that being the amount claimed in the amended petition filed herein at this term of court.

Appellants complain of this instruction but state no reason why they object to it nor are there any authorities cited. This method of ascertaining the amount of recovery in cases similar to the one at bar, has often been approved by this court. The case of Reed v. I. C. R. Co.,

25 Ky. Law Rep., 389, was one wherein Reed agreed to deliver on the right of way of the railroad company, a lot of piling at a designated price, and the court said:

"The trial court properly defined the measure of appellant's damages as the difference between actual cost to him of delivering the piling contracted for on the right of way of the company and the contract price he was to receive therefor," &c.

This is precisely the criterion fixed by the court in this case. In the case of Blood v. Herring, 22 Ky. Law Rep., 1725, the court said:

"The true test was, * * * the difference between the actual costs of plaintiffs putting the lumber on the barges for defendants and the contract price."

See also American Bridge Co. v. Glenmore, 32 Ky. Law Rep., 873. This action was for the difference between the actual cost of placing the logs below Bowling Bar and the contract price which appellees were to receive, and this was what the court told the jury to find, if anything. Appellees' testimony would have authorized the jury to find a larger amount than they did.

No reason for reversing the case has been presented to us and we have not been able to find any, therefore, the judgment is affirmed.