## Mitchell-Taylor Tie Company v. Whitaker.

(Decided April 30, 1914.)

### Appeal from Pulaski Circuit Court.

1. Contracts—Certainty of Description of Subject-Matter—Sufficiency of Contract for Sale of Timber.—A contract involving the sale and purchase of a lot of ties, that described in a general way the territory from which the ties were to be produced, was not too indefinite or uncertain to be enforceable.

2. Contracts—Timber Contract—Obligations of Parties.—Where a contract provided that "A" should deliver to "B" all the ties that he could manufacture in a certain described territory, and "B" agreed to take all the ties delivered by "A" at the place specified, "A" was bound to exercise reasonable diligence to deliver to "B" all the ties that could be produced and manufactured in the territory, and "B" was under obligation to take and pay for all the ties so delivered.

3. Contracts—Measure of Damages for Breach of in Failing to Receive Timber.—Under a contract providing that "A" should

take from "B" all the ties that he could manufacture and deliver at a certain place, the measure of damages "B" was entitled to recover on account of "A's" failure to receive and pay for the ties so delivered or that could have been delivered, was the difference between the contract price and the market price of the ties at the place of delivery.

O. H. WADDLE & SONS for appellant.

WM. M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Whitaker, brought this suit against the appellant Tie Company seeking to recover .something over five thousand dollars that he alleged it was liable to him on account of a tie contract. On a trial before a jury there was a judgment in his favor for five hundred dollars, and the Tie Company appeals.

The contract between these parties was not in writing, and the substance of it, as set out in the petition, ·vas that in 1911 Whitaker entered into a contract with the Tie Company by which he undertook and agreed to deliver to it "at certain places or yards long and near Rockcastle river from the mouth of Sinking Creek where it enters into said river up to Evans Ferry on said river, all good, sound, merchantable white-oak railroad ties that he could make from his own lands or purchase or acquire from others for a period of one year."

It was further averred that under the contract the Tie Company agreed to receive the ties every two weeks and pay for all delivered at the rate of 35 cents for first-class and 12 cents for second-class. There was a further stipulation in the contract that the Tie Company should not purchase ties from any other person North of Sinking Creek where it emptied into the river.

It seems that in pursuance of this contract a large number of ties were delivered and paid for, and the chief ground of controversy between the parties, as developed on this appeal relates to the failure of the Tie Company to pay Whitaker $333.65 for 973 ties which he claimed to have delivered to it, and its refusal to receive all the ties that he was ready and willing to deliver.

Among the grounds for reversal relied on are: that the contract was too indefinite and uncertain to be enforcible; that it was in restraint of trade, and therefore

void; that the instructions submitted an erroneous measure of damages.

The evidence shows that Whitaker had been for some time engaged, in the territory spoken of in the contract, in the manufacture and sale of ties, and the Tie Company had likewise been engaged in this territory purchasing ties; so that both of them understood with reasonable certainty the boundary covered by the contract, and we do not think, under the circumstances, that this boundary was so indefinite and uncertain as to deny Whitaker the right to recover damages for a breach of the contract. The Tie Company, according to the evidence, knew where the ties furnished by Whitaker would come from and Whitaker, under his contract, obligated himself to sell and deliver to the Tie Company all the ties that he could make from his own land or purchase or acquire from others.

A fair interpretation of this contract is that Whitaker was bound to exercise reasonable diligence, under all the circumstances, to produce and deliver to the Tie Company all the ties manufactured or purchased by him in the territory specified in the contract, and the company was bound to receive all of the ties so delivered. There was no number of ties specified, and it was not known exactly the number of ties that could be secured from the land described in the contract or purchased from others. But whatever could be made or whatever could be purchased was covered by the contract. If Whitaker had declined to furnish any ties or had furnished a less number of ties than he should have furnished by exercising reasonable diligence, we have no doubt the company would have a cause of action against him for breach of his contract. In other words, we think this contract was mutually binding upon both of the parties and that each of them was obliged to perform it in a reasonable manner: Louisville & Nashville R. R. Co. v. Coyle, 123 Ky., 854.

Nor do we think the contract was objectionable on the ground that it was an unreasonable restraint of trade or an effort to create a monopoly. It was ir every respect a limited undertaking both in regard to time and the territory embraced. We see no reason why it was not a valid contract.

The principal controversy between the parties grows out of the issue between them as to whether the contract was made or not. The Tie Company denies that it made

the contract set up by Whitaker, although it admits that it purchased from him, in the ordinary course of business, a large number of ties; and it also denies that he sustained any damages or loss by reason of its failure to comply with any contract made with him.

The testimony of Whitaker tended to show that under his contract the Tie Company was to take all of his output of ties for one year at the prices mentioned in the contract and that they did take from him about five thousand ties under this contract. That for the purpose of complying with this contract, he purchased a mill and installed it on his premises, and had cut down a lot of timber with a view of manufacturing it into ties. He further described the number of ties he could have made from the timber and the profit he could have made on the ties, and also showed that the Tie Company, after observing the contract for some time, finally broke it, and refused to take from him any other ties. He further said that, 973 ties that he had purchased and put in the yard, were washed out by a rise and lost on account of the failure of the Tie Company to take possession of them and remove them to a safe place, as it should have done.

If there was, as Whitaker testified, a contract, and he did in fact, deliver at the place appointed 973 ties, and the company failed and refused to receive these ties at the time they should have been received, and they were lost to Whitaker by reason of a rise that came in the river some months after the ties should have been accepted and removed by the company, we think Whitaker was entitled to recover from the company the value of the ties which, according to his testimony, were lost by the failure of the company to perform its part of the contract.

Upon this point we find no objection to the instructions submitting the issue in reference to this number of ties. Under the evidence and instructions, the jury found for Whitaker on account of these 973 ties, $329.50, and they were so authorized to find by the evidence.

In addition to this, they found in his favor "for damags" $170.49. Evidently this finding "for damages" was based on the evidence of Whitaker tending to show that the Tie Company had committed a breach of its contract in refusing to take and pay for a large number of ties that he claimed to have been able, ready and willing to furnish the company. If the contract was as Whit-

aker claimed, the measure of his recovery for the failure of the Tie Company to take such ties as he could deliver, was the difference, if any, between the contract price and the market price of the ties at the place of delivery: Indiana Tie Co. v. Landrum, 137 Ky., 769.

The court, however, instructed the jury that if they found for plaintiff they should award him for the ties agreed to be delivered from his land the reasonable and fair market value of them less the cost of manufacturing and placing them on the bank of the river, and if they found for him anything on account of the ties which he agreed to purchase from other parties, they should award him the reasonable profit, if any, which he would have made on the ties that he could have delivered during the continuation of the contract. This instruction submitted an erroneous and prejudicial measure of damage, as was decided in the Landrum case. The measure of damage to which Whitaker was entitled, if the jury found in his favor anything on account of ties which he could have manufactured from his own land or bought from others, was the difference between the contract price and the market price at the place of delivery.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.