### Ayer & Lord Tie Company v. O. T. O'Bannon & Company.

(Decided March 26, 1915.)

#### Appeal from the Ohio Circuit Court.

1. Damages—Pleading, Evidence and Assessment—Evidence—Loss of Profits.—Damages by way of prospective or anticipated profits are recoverable only to the extent that the proof is sufficiently definite to constitute a trustworthy measure of the loss sustained by reason of the breach of the contract complained of. So in this action by plaintiff to recover damages for breach of a contract whereby defendant agreed to purchase from plaintiff all the ties he could deliver within a stipulated period, in fixing the number of ties which plaintiff could reasonably have delivered within the stipulated period, he is restricted to those possible sources of supply which were controlled by contracts made before defendant's breach; and in connection with proof of contracts for the purchase of ties by plaintiff for application on his contract with defendant, he must also show the facilities of such persons to furnish the ties agreed by them to be furnished.

2. Damages—Measure of Damages—Breach of Contract—Prevention of Performance.—In an action to recover damages for breach of a contract to purchase from plaintiff all the ties he could deliver within a stipulated period, the measure of damages is as follows: on ties on hand, purchased from others or manufactured by himself, plaintiff is entitled to the difference between the contract price, and the market price at the place of delivery; on ties which he could have purchased and delivered within the stipulated period, the difference between the contract price and the cost of procuring them at place of delivery; on ties which he could have manufactured and delivered within the stipulated period, the difference between the contract price and the cost of such manufacture and delivery. In this case, the measure of damages on

those purchased or which could have been purchased by plaintiff is subject to a qualification limiting his profit to two cents per tie because of the peculiar nature of the contract.

3. Contracts—Performance or Breach—Tender of Performance.—An offer to perform, made after the institution of a suit for breach of contract, is but an offer of compromise; and cannot be shown in evidence. Instructions dealing therewith are therefore improper.

C. C. GRASSHAM, BEN. D. RINGO and LIKENS & CROWE for appellant.

ERNEST WOODWARD for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

O. T. O'Bannon, doing business as O. T. O'Bannon & Company, brought this action in the Ohio Circuit Court against the Ayer & Lord Tie Company, alleging that the defendant by an oral contract entered into with plaintiff in June, 1913, agreed to receive and buy from plaintiff all the railroad cross-ties of certain dimensions and specifications which plaintiff could or would deliver to defendant on or before January 1, 1914, at certain points on Rough River, Green River and Pond River, at certain agreed prices; that defendant, after taking about eighteen thousand ties, notified plaintiff on September 2, 1913, that it would not receive any more; that by said breach of its contract upon the part of defendant, plaintiff was caused to lose two cents per tie on all the ties he had arranged for and could have delivered at the designated points prior to January 1, 1914, alleged to be two hundred thousand ties.

Defendant answering denied the making of such a contract, but admitted that on July 10, 1913, it did agree with plaintiff to receive and pay for all the ties delivered by plaintiff at the points mentioned, but that no fixed number was agreed upon, nor was any time limit specified within which the deliveries were to be made; and it further alleged that it was agreed that in the event defendant notified plaintiff that it would cease the purchase of ties in that territory, plaintiff would at once stop the purchase and manufacture of ties, defendant agreeing, however, to take such ties as plaintiff might have on hand at the time of the giving of such notice and any which might thereafter be made from timber already cut for the purpose of manufacturing ties for plaintiff.

There was a verdict and judgment for plaintiff in the sum of two thousand dollars; and defendant appeals.

1. Appellant contends that the contract as alleged by plaintiff in the petition is void for want of mutuality, its contention in this respect being based upon the use of the language that "defendant was to buy, inspect, receive and pay for all the * * * ties that plaintiff could or *would* deliver before the first day of January, 1914." The argument of appellant is that the use of the word "would" renders the contract one imposing no obligation upon the appellee, and that it therefore lacks mutuality of obligation and is void.

Had the contract been a written one, we would be inclined to consider this contention of appellant's at greater length; but the pleader was setting out an oral contract, and we attach no special importance to the use of the language in question. That the word "would" was used inadvertently was shown by the evidence, for under the issues the contract made was required to be and was proven. No demurrer was filed to the petition; no question of the want of mutuality of the contract was presented in the lower court; the instructions given omitted the feature complained of; and under these circumstances, we think the verdict and judgment cured the defect complained of.

The rule is sometimes stated to be that the verdict cures a cause of action defectively stated although it will not cure a defective cause of action. Had the contract here involved been in writing, and thereupon complete as to its terms and as stated in the petition, it might be contended that the cause of action itself was defective, that is, that the contract was void for the want of mutuality of obligation, which, however, we do not decide. But, the contract being oral, in view of the evidence, we think it merely a case of the cause of action being defectively stated, and that the defect was cured by the verdict. Aiken v. Gooch, 7 R., 100; Hickman v. Southerland, 4 Bibb., 194; L. & N. v. Shelbourne, 117 S. W., 303; Winstead v. Hicks, 135 Ky., 154, 121 S. W., 1018; L. & N. v. Burch, 155 Ky., 245, 159 S. W., 782; Title G. & S. Co. v. Commonwealth, 141 Ky., 570, 133 S. W., 577.

2. Eliminating the inadvertently-used "or would" from the contract as alleged, the petition avers a contract which is not lacking in mutuality, and one which

imposed upon the plaintiff the duty of exercising reasonable diligence to procure and deliver to defendants at the points named and within the period stipulated, all the ties of the dimensions and specifications mentioned which he could deliver; and one which imposed upon the defendant the duty of receiving and paying for such ties in accordance with the contract as alleged. Mitchell-Taylor Tie Company v. Whitaker, 158 Ky., 651, 166 S. W., 193.

3. Upon the issue as to the number of ties which plaintiff could reasonably have obtained and delivered at the points and within the time stipulated in his contract with defendant, it was competent to prove any contracts made by him for the purchase by him of ties of the kind required and for delivery at the points and within the time mentioned; but proof of such contracts was not alone sufficient to establish the number of ties available to plaintiff for application upon his contract with defendant. Whether the number of ties so arranged to be purchased was stipulated or not, there should have been shown the available timber resources possessed by or at the disposal of such parties and their facilities for the manufacture of same into ties, and this should have been done by the competent testimony of properly qualified witnesses in such manner as to have reasonably fixed the number of ties which plaintiff could reasonably have obtained from the several sources of supply in question.

Damages by way of prospective or anticipated profits are recoverable only to the extent that the proof is sufficiently definite to constitute a trustworthy measure of the loss sustained by reason of the breach of contract complained of; hence the court is of the opinion that to permit in cases like this, the consideration of sources of supply other than those based upon and controlled by contracts actually made before the breach by the ultimate purchaser, would be to extend the liability to a point where the damages are too speculative to admit of certainty of proof.

Appellee insists that he should have been permitted to show the number of ties which he could reasonably have obtained from unknown parties, and the number of custom ties that would reasonably have been available to him in the open market; but the trial court very

properly excluded this class of evidence; it was too uncertain to measure up to the standard of legal proof.

Complaint is made by appellant concerning the introduction over its objection of a large amount of testimony as to the number of ties which appellee could have furnished on his contract with appellant. An examination of the record discloses that while the trial court endeavored to restrict this evidence to possible sources of supply which were controlled by contracts made before appellant's breach of its contract with appellee, the court did not require proof of the facilities of the persons with whom such contracts were made, to comply therewith.

Appellee testified that he made a contract with George Baize for his ties, and that he believed he would have obtained from that source of supply at least 10,000; but there is no proof that Baize could reasonably have furnished that number.

Appellee testified that he made a contract with Henderson Kirtley for his ties; and they "estimated" that the latter could furnish 6,000 to 7,000; but there is no proof that Kirtley could have done so.

Appellee testified that he made a contract with Murphy Brothers for one-half their output and would have obtained from that source 3,000 ties; but there is no proof of their facilities for furnishing that number.

Appellee testified that Dr. Park came to him and said he wanted to cut nine thousand ties. He did not even testify in this connection to facts sufficient to show a contract made, but if there had been one made, there was lacking proof of Park's facilities for furnishing the number of ties mentioned.

Appellee testified that he made a contract with Lon Ralph for 30,000; but there is no proof that he could reasonably have procured 30,000 ties from that source of supply.

Appellee also testified that he contracted with Scott & Laffoon for 30,000 ties. There is no proof of their facilities for furnishing these, or that appellee could reasonably have procured that number of ties from that source. In addition, the testimony as a whole does not show definitely that there was a contract made by appellee with Scott & Laffoon. It seems to be intimated that appellee only conducted the preliminary negotiations and that this contract was closed by Mike Sevier,

acting for the Ayer & Lord Tie Company, appellant herein, but under what kind of an arrangement with appellee is not disclosed.

We deem it unnecessary to prolong a review of the testimony in the record upon the issue as to the number of ties which appellee could reasonably have obtained and delivered to appellant for application on the contract here involved. Plaintiff should not have been permitted to testify to statements made to him by the parties with whom he made contracts for the purpose of ties concerning their facilities for furnishing ties or their estimates as to the number they could deliver; nor should he have been permitted to testify concerning his belief in regard to these matters. He could, of course, state his opinion as to the number of ties which could reasonably be obtained from a designated body of timber provided he stated facts showing himself sufficiently familiar therewith as to qualify him to speak on the subject; and he could testify as to such facts as were within his knowledge concerning the facilities of the persons mentioned for furnishing ties; but if he did not himself actually know something about the timber possessed by or the facilities of such persons to furnish ties, his testimony should have been confined to the bare fact of the making of the contract of purchase, that is, the terms of the contract; and then unless he showed by other competent testimony, with reasonable certainty that such party had the facilities for complying with the contract, that is, for furnishing a certain number of ties, his testimony concerning the contract should have been excluded.

Because of the failure of the plaintiff to show with reasonable certainty the number of ties of the kind and dimensions required which he could reasonably have procured and delivered for application on his contract with defendant within the stipulated period, the judgment must be reversed. Upon another trial, should there be one, what has been said above will be sufficient to guide the trial court in controlling the proof. It must be sufficiently definite to furnish a trustworthy measure of the loss sustained.

4. Appellant also complains of the instruction dealing with the measure of damages.

As to the ties, if any, which appellee had on hand when the contract was repudiated by appellant, which he had procured by purchase from others, the measure

of damages would be the difference between the contract price and the market price. Indiana Tie Co. v. Landrum, 137 Ky., 769, 127 S. W., 141.

And, if appellee could have procured any ties by purchase from others under contracts made as hereinbefore indicated, for application on his contract with appellant, the measure of damages as to these is the difference between the contract price and the price which it would have cost appellee to have procured the ties at the time and place of delivery, 35 Cyc., 594.

It also seems from the evidence that in addition to the purchase of ties from others, appellee was to have the right to apply on his contract with appellant ties of his own manufacture. As to these, if any were on hand when the contract was canceled, or if any were thereafter made from timber cut at that time for the purpose of manufacture into ties to be applied on the contract with appellant, the measure of damages is the difference between the contract price and the market price at the time and place of delivery.

But as to such number of ties, if any, as he could have thereafter manufactured and delivered within the period stipulated, the measure of damages is the difference between the contract price, and the cost of such manufacture and delivery. 35 Cyc., 595; Hughes Lumber Co. v. Knuckles, 146 Ky., 472.

The only issues to be submitted to the jury in this case are (1) whether the contract claimed by plaintiff was made between plaintiff and defendant, or whether the contract made was that claimed by defendant; and (2) if made as claimed by plaintiff, what damages is he entitled to by reason of the breach thereof by defendant.

Instructions one and four as given by the trial court seem to cover the first issue satisfactorily; but instruction two on the measure of damages should have followed the rules outlined above. Instruction six should not have been given at all. There is no issue involved as to any unnecessary increase of damages. The instructions on the measure of damages as to the ties on hand permit a recovery of the difference between the contract price and the market price. Whether plaintiff sold or tried to sell them or refused to sell them after defendant's breach of the contract is immaterial.

5. Appellant also complains of Instructions Nos. 3 and 5, both of which deal with appellant's claim to abso-

lution for its breach of the contract sued on, because of an offer to perform, made by it after this suit was filed.

If the contract between appellant and appellee was as appellee claims then, when the appellant renounced the contract, appellee's right of action for the breach thereof accrued. Elliott on Contracts, Section 2099. And an offer to perform made after the suit was filed was a mere offer to compromise; evidence thereof should have been excluded, and the instructions dealing with that issue should not have been given.

Appellee in an effort to show that such offer to perform was not made in good faith, introduced a good deal of evidence relating to the severity of the inspection afforded by appellant on the ties taken up by it after it gave the notice of cancellation, claiming that on account of such severity of inspection, he was justified in declining the belated offer to perform. By the elimination of the issue as to this offer to perform, all evidence relating to the character of inspection will be dispensed with. The only issues will be as above indicated.

Reversed. Whole court sitting.