No. 9303-9304.

KILKER v. THE PEOPLE.

WEST v. THE PEOPLE.

INTOXICATING LIQUORS—*Importations under Act of* 1915. Section 7 of chapter 98 of the Acts of 1915, as amended by chapter 82 of the Acts of 1917 is to be construed as a whole. The limitation of the quantities that may be imported, contained in the amended statute, has no application to importations lawfully made before the statute took effect.

*Error to Arapahoe County Court, Hon. George W. Dunn, Judge.*

Mr. F. T. JOHNSON, Mr. S. W. JOHNSON, for plaintiffs in error.

Mr. LESLIE E. HUBBARD, Attorney General, Mr. CHARLES ROACH, Miss CLARA RUTH MOZZOR, Attorneys General, for The People.

Garrigues, C. J.

No. 9303 of this court, in the first count of the information, charges Kilker with unlawfully importing intoxicating liquor into the state for sale or gift. In the second count, he is charged with unlawfully keeping intoxicating liquor for sale; and, in the third count, with unlawfully receiving at one time more than two quarts of whiskey. The case against West (No. 9304) is identical, and, by agreement, they were consolidated in the lower court and tried together. Defendants were acquitted on the first count, convicted on the third of receiving more than two quarts, and the second count was withdrawn from the jury. The court fined them each $150.00, and ordered them confined, at hard labor, in the common jail for three months. Upon motion of the District Attorney, the court then pronounced a supplemental sentence against the liquors, and ordered that they be distributed to certain hospitals and sanitariums.

The informations are based upon the 1915 prohibition statute, as amended in 1917. A comprehensive summary of the act of 1915, which is necessary to an understanding of the case, will be found in No. 9188 of this court, entitled, *Noble, et al. v. The People.*

Section 7, as amended in 1917, provides that each county clerk and recorder shall keep a book of numbered forms designated a "record of importation of intoxicating liquor," containing blank applications and permits. To import, and keep intoxicating liquor for use in one's home, he must fill in, subscribe and make affidavit to a blank application; whereupon, the clerk and recorder shall fill in, and deliver to the applicant, a permit to import the, desired liquor, limited in amount to two quarts, and it is made unlawful for the person to receive, at any one time, more than the limited amount named in the permit. In the blank form the applicant must state that he desires to import not to exceed two quarts of intoxicating liquor for use in his home, and the permit authorizes him to import not to exceed that

amount. The statute further provides that no person shall have or keep intoxicating liquor in any public place except while carrying it with the permit securely fastened thereto.

Section 8, as amended, provides that the word "carrier," as used in the act, means railroad companies, or express companies regularly chartered, operating over railroad lines, each having regularly established routes, depots, stations and offices. It makes it unlawful for any person, except carriers, to carry intoxicating liquor into the state, or from one point to another in the state; except that it shall be lawful for carriers to carry and deliver it from one point to another in the state, if the package containing the liquor is accompanied by a legally issued permit.

Section 21, as amended, provides that the finding of intoxicating liquor in the possession of any one, except as in the act provided, shall be *prima facie* proof of a violation of the act.

The amended statute took effect April 24, 1917. April 20th defendants, who were gardeners living near Englewood, in Arapahoe County, each ordered fifteen cases of whiskey, containing twenty-four pints each, shipped to them by freight to Englewood from a wholesale liquor house in Cheyenne. The undisputed evidence, and the acquittal on the first count, show it was for their personal use, and they intended taking it to their homes. The shipment arrived in Denver by freight over the C. & S. on the 21st, and on the 23rd was transferred at Denver to the Santa Fe, and reached Englewood the same day. The agent notified them, and also the sheriff's office, on the 24th, of its arrival. The 25th defendants drove over to the station with a team and wagon and asked the agent for the shipments. The sheriff kept an officer there waiting to arrest them when they took the liquor. The station agent had them each sign the consignee's affidavit required by section 8 when the liquor was ordered and shipped. West paid his freight charges, amounting to $4.16, but Kilker,

not having money enough with him to pay his, made arrangements with the agent to come back for his shipment afterwards. They then went to the freight room for West's shipment. He backed the wagon up to the door, and Kilker went inside, intending to carry it out. In hunting for West's name, he reached over the pile and loosened up one of the boxes and pulled it over toward him about half way off the pile, when some remark was made about how they would load it. At this point, before any of the cases were taken up from the pile, the officer, who was in the freight room at the time watching them, placed them both under arrest, and ordered them to load both shipments into the wagon and drive to the Court House at Littleton. They objected, but, upon orders from the officer, they complied, while under arrest, and loaded all the cases into the wagon, and, under his orders, while in his custody, drove to Littleton, where informations were filed against them, and the liquor taken from their possession. The thirty cases were admitted in evidence on the trial, and contained ninety gallons. The court instructed that, if defendants imported the liquor into Colorado for sale or gift, the jury should find them guilty on the first count, and if they each received more than two quarts from the railway company on the 25th of April, 1917, the jury should find them guilty on the third count, regardless of the purpose for which they received it, and if the intoxicating liquor offered in evidence was found in their possession after the 24th, without a permit attached thereto for its importation, and not in the home of the defendants, then this would be *prima facie* proof of their guilt under the third count, which charged them with receiving more than two quarts.

Garrigues, C. J., after stating the case as above, delivered the opinion of the court:

The liquor was imported into the state lawfully, and in a lawful amount, and reached its destination before any permit was required. Notwithstanding this, the court told the jury, if the shipments offered in evidence were found in

defendants' possession after April 24, 1917, without a permit to import attached thereto, and not in their home, that this was *prima facie* proof of their guilt under the third count. This instruction is based on amended section 21, which provides: "The finding of intoxicating liquor in the possession of any one, except as in this act permitted, shall be *prima facie* proof of a violation of this act." Defendants were not accused of not having a permit attached to the liquor. No such charge could have been made because it was not required of them. The law requiring a permit did not apply to these shipments. It was not because they imported more than two quarts, as that was lawful; nor because they did not have a permit to do so, as that was impossible, but for the sole reason that they received more than two quarts at one time, that they were convicted. So the instruction did not apply to the case, and should not have been given, but probably it made no difference because the court also instructed the jury that, if defendant, on April 25, 1917, received from the railway company the intoxicating liquor in question at one time, and there were more than two quarts of whiskey so received by him, it would be the duty of the jury to find him guilty on the third count, and that the purpose in receiving it, if they received it, was immaterial. The prosecution, in support of this latter instruction, contends that it was simply a question of receiving; that, although the liquor was lawfully imported into the state prior to the amendment, when no permit was obtained or required, still, if more than two quarts of the shipments were received at one time, the conviction must be upheld.

The liquor was imported into the state April 21, 1917, and the amendment took effect on the 24th. The undisputed evidence, and the verdict of the jury in acquitting upon the first count, are conclusive upon us that it was lawfully imported, and in a lawful amount, before the amendment became the law. Therefore, the whole question is whether the amended section applies to these shipments which were

imported, and had reached their destination, before the law went into effect. It must be borne in mind that these prohibition acts are importing statutes. Under the act of 1915, there were no restrictions upon the amount one could import for personal use. The amendment of 1917 relates to "importation restrictions." These restrictions, of necessity, do not apply to liquors already here, but relate to importations under the act. It is the amended section that restricts the amount and requires an application and permit to import, and makes it unlawful to receive at one time more than the restricted amount. The limitation in the section on "receiving" must be read in connection with the limitation regarding importing, and does not relate to liquors already imported when the act took effect. The whole section 7, as amended, must be read and construed together. Viewed as a whole, there is no doubt the limitation on receiving relates to the limitation on importing. We are, therefore, of the opinion that the amendment of 1917, limiting the quantity that could be imported and received, has no application to these shipments which were lawfully imported before the law went into effect, and that the conviction of receiving more than two quarts of these shipments can not be sustained.

Reversed and remanded.

Mr. Justice Scott and Mr. Justice Denison concur.