Nos. 9284-9285.

## KILKER v. THE PEOPLE.

## WEST v. THE PEOPLE.

1. INTOXICATING LIQUORS—*Statute Construed.* Liquors imported by a citizen for his own use, are not, while in transit, or awaiting delivery by the carrier, or being taken by the citizen to his house, kept in any place, in violation of sec 13, of c. 98, of the Acts of 1915. An officer has no power to take possession of the liquors under these circumstances, and the importer is entitled to maintain replevin against the officer, pending a criminal prosecution under the statute.

2. PLEADINGS—*Demurrer Sustained—Effect.* Sustaining a demurrer to the answer and entering judgment on the pleadings, without hearing evidence, admits the allegations of the answer. For the purposes of review they are taken as confessed.

*Error to Arapahoe County Court, Hon. Geo. W. Dunn, Judge*

Mr. F. T. JOHNSON and Mr. S. H. JOHNSON, for plaintiffs in error.

Mr. SAMUEL W. JOHNSON, District Attorney, and Mr. CHARLES E. FRIEND, for The People.

Mr. Chief Justice Garrigues delivered the opinion of the court.

PLAINTIFFS in error were each sentenced for contempt by the County Court of Arapahoe county for bringing, while criminal actions against them were there pending, a replevin suit in that court to recover from the relator the possession of two shipments of liquor which he, as sheriff, had seized in the depot without an affidavit or warrant.

April 26, 1917, separate criminal informations were filed in the County Court at Littleton against John Kilker and J. J. West, by the District Attorney upon information received from relator, E. F. Burden, as sheriff of Arapahoe county. The first count charged them with unlawfully importing liquor for sale or gift, and the second with

unlawfully keeping it for sale or gift in violation of sec. 1 of the liquor act of 1915, and the third count charged them with unlawfully receiving more than two quarts of whiskey at one time in violation of the liquor act of 1917. May 8th each defendant commenced a replevin suit to recover possession of his shipment seized by the sheriff in the station. The coroner served the replevin writ upon the sheriff who gave bond and retained possession. May 9th relator filed the complaints praying for their arrest and punishment for contempt of court for bringing the replevin suits.

For a better understanding of the case it may be well to state that the acts charged in the criminal cases, involving the same shipments of liquor, the same defendants, and the same transactions, were before us in *Kilker and West v. The People*, 66 Colo. 75, 179 Pac. 145, from which it appears that defendants, who were gardeners living near Englewood, each ordered on April 20, 1917, 15 cases of 24 pints each of whiskey shipped to them by freight from Cheyenne to Englewood. The shipments arrived in Denver over the C. & S. R. R. on the 21st, were transferred to the Santa Fe, and on the 23rd arrived at their destination, where they were held in the freight depot awaiting delivery to the consignees. The next day the station agent notified them, and on the 25th they went to the station with a wagon to get the shipments. At the request of the agent they each signed the consignee's affidavit required by sec. 8 of the 1915 act. West paid the freight charges on his shipment, Kilker made arrangements with the agent to come back for his afterwards, and then they went to the freight room to get West's shipment and take it home. He (West) backed the wagon up to the door while Kilker went inside intending to carry it out. In hunting for West's name on the cases, Kilker reached over the pile, loosened up a case and pulled it toward him about half way off the pile, when some remark was made about how they would load it. At this point, but before any of the cases were loaded or removed from the pile, the officer, without a

search warant, seized the liquor in the station, placed defendants under arrest, and against their protest ordered them to load both shipments into the wagon and drive to Littleton courthouse. They objected to this, but while under arrest he compelled them to load all the cases into the wagon, and drive to Littleton where he placed the men in jail, and as far as defendants know has ever since retained the possession of the liquor. The sheriff then informed the District Attorney, and the next day he filed in the County Court a criminal information against each defendant verified by the sheriff, which were consolidated and tried as one case.

Upon the trial of that part of the criminal case based upon sec. 1 of the act of 1915, the jury acquitted defendants upon the charge of unlawfully importing, and the District Attorney dismissed the second count for unlawfully keeping the liquor, and the jury convicted them upon the charge of receiving more than two quarts at a time based upon the law of 1917. We reversed this conviction (see 179 Pac. 147) upon the ground that the 1915 act as amended in 1917, taken as a whole, was an importing statute, the restriction of which against receiving more than two quarts at a time did not relate to liquors already imported, and at the station before the act of 1917 went into effect.

No complaint of any kind was ever filed against the liquor, and no order of court entered that it be held for any purpose, and no affidavit was made, and no search warrant issued under sections 11 and 12 and no action or special proceeding ever commenced other than the criminal complaint against the defendants. The officer claimed to act under, and based his authority upon sec. 13, Liquor Laws of 1915.

Defendant West's answer in the contempt case, after denying and admitting certain allegations of the complaint, alleged in substance that his home and private residence was on a garden tract near the town of Englewood in Arapahoe county; that about April 21, 1917, to supply him-

self and for his own personal use, he sent an order to Cheyenne to have shipped to him by railroad transportation, the liquor in question, to be taken from the Santa Fe depot by him and conveyed to his home and residence near the town of Englewood; that the liquor was shipped as ordered, and arrived at the depot about the 25th; that he went with a team and wagon to get the shipment and haul it out to his home and private residence; that he complied with the law then in force pertaining to the purchase and importation of intoxicating liquors for personal use in private homes and residences; that before he secured possession of the liquor, and while it was in the station, relator as sheriff seized the shipment, placed him under arrest at the depot, and ordered him to put the cases of liquor in his wagon and haul them to the sheriff's office at Littleton, which defendant did under compulsion; that the liquor was unloaded under the sheriff's direction at Littleton, and taken into his custody where, as far as he knows, it has remained ever since; that no complaint was ever filed against the liquor, or demand made that it be placed in the custody of the court for any purpose; that the shipment was seized by the sheriff in the railroad depot, while in course of transportation to defendant's home and private residence, but before he had taken possession of it, without any affidavit made, or search warrant or process of any kind issued or directed against the liquor, and is now held by the sheriff without process of any kind; that he began the replevin suit for the purpose of trying the right of possession which was commenced in the same court wherein the criminal informations were pending; that the shipment had been wrongfully and illegally seized, and taken out of the depot and kept by relator, and the replevin action was commenced in good faith, for the purpose of obtaining possession. Kilker's answer is the same.

A demurrer to the answer was sustained in each case and they elected to stand by the answer, whereupon judgment was entered against them on the pleadings without any evidence whatsoever, and they bring the case here for review upon error.

Garrigues, C. J., after stating the case as above.

Sustaining the demurrer and entering judgment on the pleadings without evidence admitted the allegations of the answer which for the purpose of review are taken as confessed. Defendant, for his own personal use in his home, ordered, under the liquor statute of 1915, a consignment of liquor from Cheyenne. The sheriff seized the shipment in the station without an affidavit and warrant while defendant was there with his wagon intending to get it and take it to his home, arrested defendant, and has ever since kept the shipment. The next day the District Attorney filed a criminal complaint in the County Court against defendant at the suggestion of relator, before the trial of which defendant brought a replevin suit to obtain possession of the liquor, for which he was adjudged to be in contempt of court and sentenced to jail. The only question in review is whether it was contempt of court to bring the replevin suit while the criminal action was pending.

Whatever power and authority the officer had in the case is found in sec. 13, Intoxicating Liquors Law of 1915. It provides in substance: That any sheriff, having personal knowledge or reasonable information that intoxicating liquors are kept in violation of law in any place, shall search such suspected place without a warrant, and without any affidavit being filed, and if the officer finds upon the premises intoxicating liquors, he shall seize the same, and arrest any person or persons in charge of such place, or aiding in any manner in carrying on the business conducted in such place; and shall take the person with the liquors so seized forthwith before a justice or a judge, and without delay make and file a complaint for such violation of the law as the evidence justifies.

If the sheriff exceeded his authority or jurisdiction under this section, that is, had no power to seize the liquor, defendant had a right to replevin the shipment, and the county court had no jurisdiction to punish him for contempt in doing what he had a right to do. Under the act of 1915 it was lawful for defendant to import and keep the

liquor in question in his home for his own use, and while it was in transit on the railroad, or at the station awaiting delivery or being taken from the station to his home, it was not kept in a place in violation of any statute within the meaning of sec. 13. The answer admits the liquor was imported for defendant's private use in his home, and was at the station awaiting delivery, and while he was there for it intending to take it to his home for his own use the officer, without affidavit or warrant, seized the shipment in the station and took it out of the station and retains possession. The sheriff in such a case had no power, authority, right or jurisdiction to seize the liquor under this section. It was not kept there within the meaning of the section, but was in transit to defendant's home and only held for delivery by the carrier to the consignee. The station agent, and not defendant, was in charge of the station, and it cannot be said that he was conducting a liquor business by delivering a proper shipment. Even if the officer obtained possession at the station from defendant, as alleged in the complaint, it was not kept in a place while being carried home by him any more than it was kept in a place while in transportation from Cheyenne or at the station awaiting delivery. For this reason the officer in searching the station, and making the seizure exceeded his power or authority under the admitted facts. Sec. 13 was intended as an aid in the arrest and conviction of persons selling or giving away liquor in violation of law by discovering and summarily seizing, without an affidavit and warrant, liquor kept, hidden or stored away upon premises, or at a place, for sale or gift which when produced in court as evidence would tend to convict the person. In such a case, if the officer making the search and seizure acts within the provisions of sec. 13, that is, does not exceed his power and authority under this section, he has a right to seize and retain possession of the liquor as evidence on the criminal trial against the person arrested, and as a rule replevin would not lie, until after an acquittal of the person and refusal to give up the possession. In this case how-

ever the undisputed facts show affirmatively that there was no power or authority to seize the liquor under the provisions of sec. 13, hence defendant had a right to replevin at any time. This issue was raised by answer and should have been tried, and it was error to sustain the demurrer. Relator was called upon to show his authority for seizing the shipment. It is not like the case where an officer searched a person and took from him concealed weapons, there the statute expressly confers such power.

*Reversed and Remanded.*

Mr. Justice Scott and Mr. Justice Denison concur.