## Friedberg, Incorporated v. McClary, et al.

(Decided January 30, 1917.)

### On Motions to Dissolve and Reinstate Injunction.

1.  Injunction—Breach of Contract—Multiplicity of Suits.—Pending final hearing and determination of the case an injunction will be granted to prevent the breach of a contract, where the breach of the contract, the insolvency of the defendant, the inadequacy of any other remedy, the probability of a multiplicity of actions and the irreparable loss to which the plaintiff would be subjected if denied the injunction, are shown.

2.  Injunction—Against Persons Not Parties to Contract.—Pending final hearing and determination of the case an injunction will be granted against persons not parties to a contract of sale to prevent their interference therewith, where it appears that they are attempting to purchase and receive from the defendant the subject of his contract with the plaintiff, and are not innocent purchasers, and unless they are restrained from interference with the contract plaintiff will be deprived of any benefit thereunder and will have no adequate remedy at law for its breach.

A. J. CARROLL for plaintiff.

EDWARDS, OGDEN & PEAK for defendants.

OPINION BY CHIEF JUSTICE SETTLE—Overruling motion to dissolve and sustaining motion to reinstate injunction.

This case, now pending in the Jefferson Circuit Court, chancery branch, second division, is before me, a judge of the Kentucky Court of Appeals, on motions made by the plaintiff, H. Friedberg, Incorporated, and the defendant, C. P. McClary, respectively; that of McClary being to dissolve an injunction granted by the lower court, which restrains him, until the further order of the court, from selling or delivering, directly or indirectly to any person or persons except the plaintiff herein any of the tobacco purchased by him (defendant) in the state of Indiana, and which is mentioned or embraced in certain written contracts which plaintiff claims to have made with him. The motion of the plaintiff is to reinstate so much of the same injunction, dissolved by the court below, as restrained the defendants, J. M. Buckner and Gaston, Williams & Wigmore, from purchasing, paying for or receiving, directly or indirectly, any of the tobacco referred to under a con-

tract claimed by them to have been made with the defendant, C. P. McClary, for the purchase thereof.

The action grew out of the alleged violation by the defendant, C. P. McClary, of the written contracts in question, the first of which, dated November 24, 1916, and to expire at noon, December 2, 1916, gave the plaintiff, H. Friedberg, Incorporated, an option on the tobacco McClary claimed to have bought at Rockport, Lake, Tennyson and Chrisney, Indiana, amounting in all to between 900,000 and 1,250,000 pounds, at the following prices: $1.50 per hundred profit on all tobacco ordered delivered loose, f. o. b. cars, and $1.75 per hundred profit above cost on all tobacco ordered prized. Plaintiff was to assume a contract under which McClary had sold all the trashes, to be prized in two grades and delivered f. o. b. cars, such contract to be shown to plaintiff if it exercised the option.

The option was accepted by the plaintiff, H. Friedberg, Incorporated, and on December 8, 1916, the same parties entered into the second contract, which recites, in substance, that the defendant, McClary, had sold to plaintiff the purchases of tobacco made and to be made by him in Indiana, described in the option, to be received at the points named therein; and, in addition, certain small purchases of tobacco made by him in Kentucky, which he would be allowed to receive at some point or points in Kentucky, if so desired. McClary agreed to deliver only the tobacco received by him, but to use his best efforts to have all the tobacco delivered that he had contracted for; and not to pay over $8.50 per one hundred pounds for the best dark crops and $12.50 per one hundred pounds around for the best burley crops that might be bought by him after the date of the contract; the medium and common crops in the same proportion, unless by agreement of plaintiff. The contract further provides that after the purchases of tobacco in Indiana and Kentucky should amount to 1,250,000 pounds, by mutual agreement further purchases might be made at some other point, if necessary, McClary to receive $1.00 per one hundred pounds for buying and prizing such extra purchases, at prices to be directed by plaintiff; the latter to give proper guarantee to the Louisville Tobacco Warehouse Company that all the tobacco purchased by plaintiff of McClary would be paid for, and to pay to the Louisville Tobacco Warehouse Company

each day drafts drawn upon it by McClary for the tobacco received and paid for by him; and, in addition, the profit above cost that under the contract would be going to McClary. McClary was required by the contract to sort and prize the leaf tobacco by lengths and colors, each length and color to itself in good winter order, as follows: Twenty-six inches and upward, in hogsheads to itself; twenty-three inches to twenty-five inches in hogsheads to itself; twenty-one inches to twenty-three inches in hogshead to itself; and twenty-one inches and downward in hogsheads to itself; the lugs to be prized to themselves in lengths and colors, as the leaf.

It appears from the averments of the petition that after the giving of the above option and making of the above contract, and after the plaintiff had paid for 214,000 pounds of the tobacco embraced therein, only 16,800 pounds of which had been delivered by the defendant, McClary, the latter violated the contract by selling all the tobacco embraced therein, except the 16,800 pounds actually delivered, to the defendants, J. M. Buckner and Gaston, Williams & Wigmore, at prices in excess of those he was to receive from plaintiff under the terms of his contract with the latter.

By the prayer of the petition it was asked that the defendant, McClary, be compelled by mandatory injunction to deliver to plaintiff all the tobacco purchased of him by the latter under the contracts referred to, and that he be prevented from delivering any part thereof to the defendants, J. M. Buckner and Gaston, Williams & Wigmore; also, that the latter be enjoined from obtaining or receiving from McClary any part of the tobacco in question; and, if this could not be done, that McClary be made to account to plaintiff for all profits realized from the sale of the tobacco to J. M. Buckner and Gaston, Williams & Wigmore.

The grounds alleged and upon which the plaintiff asks the relief sought are: That if the defendant, McClary, is permitted to violate the contract under which plaintiff purchased of him the tobacco, or the sale thereof made by McClary to Buckner and Gaston, Williams & Wigmore is effectuated, it will deprive plaintiff of the tobacco and cause him irreparable loss; that McClary is utterly insolvent; that plaintiff has no adequate remedy at law, and unless it can obtain the relief herein sought and compel the delivery to it by the defendant, McClary, and

the defendants, Buckner and Gaston, Williams & Wigmore, of the tobacco, it will be . compelled to violate divers contracts with others whereby it sold to them the tobacco purchased of McClary, relying upon the good faith of the latter and his ability and willingness to comply with his contract made with the plaintiff, by all of which it will become involved in a multiplicity of suits and be subjected to irreparable loss and damage.

With this general statement of the nature and object of the action, it becomes necessary to determine whether the injunctive relief invoked by plaintiff will afford the only adequate remedy open to him. We know of no better statement of the law on this subject than that found in 22 Cyc., pages 769, 770 and 771:

"Except as changed by statute, the rule is that an injunction will not be granted where there is an adequate remedy at law. All the courts agree in stating this principle, the problem in any individual case being whether the remedy at law is adequate. To defeat the equitable jurisdiction, however, it is not sufficient that the law should merely afford some remedy; that remedy must be as practical and efficient as is the equitable remedy in rendering justice and as prompt in its administration. An injunction is in many cases more prompt and efficient than any legal remedy, and because of this promptness and efficiency there is a strong tendency to grant injunctions in cases where formerly the remedy at law would have been deemed fully adequate. So the existence of remedy at law which would ordinarily be available is no objection to the granting of an injunction when, for reasons beyond his control, the complainant cannot avail himself of it; and the same is true where the remedy must be sought in a foreign court.

"The principal remedy afforded by courts of law for an injury is money damages. If such damages will constitute an adequate compensation for the injury threatened or inflicted, equity will not interfere by injunction. But the mere fact that damages are recoverable at law is no objection to the granting of an injunction in case such damages would not be an adequate compensation for the injury."

Again, on page 773, same volume, it is said:

"The solvency or insolvency of defendant is not important where the injunction is sought on the ground of the impossibility of measuring the injury in terms

of money; there the remedy at law is inadequate, however responsible defendant may be. Insolvency of defendant is frequently an added ground for an injunction where the complainant is really entitled on other grounds to the relief asked. But in many cases an injunction has been granted on the ground that the defendant is insolvent, where, were it not for such insolvency, an action for damages would be an adequate remedy. Thus an insolvent defendant has been enjoined from making a wrongful transfer of property, from wrongfully paying out money that belongs to the complainant, or from doing other wrongful acts to the injury of the complainant. Suits for the purchase-money of property have often been restrained where defendant therein has a set-off that he could make use of only in a separate action, and that action would afford him an inadequate remedy because the other party is insolvent. And the payment of money by third persons to one who is insolvent may be restrained at the suit of those entitled to the money. It is self-evident that where damages would fully compensate for the injury and defendant is solvent and able to respond, no injunction should issue."

The above view of the law has been adopted by the Court of Appeals of this state. Under its earlier decisions the grounds for injunctive relief were limited, such relief being disallowed where there was a legal remedy, though inadequate, that could be invoked. But as said in Mason v. Byrley, 26 R. 487, 84 S. W. 767, and declared in earlier and later cases:

"Under the Code of Practice as it was originally adopted, an injunction was only allowed to restrain the defendants from a particular act (Civ. Code Prac., secs. 271, 272, as originally enacted), but by the acts of 1894, p. 206, c. 87, this was changed, and by sec. 271, it is provided: 'When any mandatory injunction shall be granted, the order or judgment may affirmatively direct the party enjoined to do the act or thing required to be done.' And by sec. 276 it is further provided that the preliminary injunction 'may be mandatory in its nature if the case so require.' In High on Injunctions, sec. 2, it is said: 'Injunctions are known as "mandatory" or "preventive," according as they command the defendant to do or refrain from doing a particular thing.' Further on in the section, after laying down the rule

that the remedy by mandatory injunction is 'exercised with extreme caution, and is confined to cases where courts of law are unable to afford adequate redress, or where the injury cannot be compensated in damages,' it is further said: 'And in determining whether to grant relief by way of mandatory injunction, courts of equity will take into consideration the relative convenience and inconvenience which would result to the parties from granting or withholding relief, and will be governed accordingly.' The chancellor will not interfere by injunction where there is an adequate legal remedy; but where there is no adequate legal remedy, and the ends of justice require it, he will interfere by injunction to prevent irreparable injury, and, by the express provisions of the code above quoted, his injunction may be preventive, or, if necessary, it may be mandatory. . . . . In the case before us the remedy by mandamus is wholly inadequate; the injury cannot be compensated in damages; and, unless an injunction is granted, the plaintiff will be left without remedy. It is, therefore, one of the extreme cases in which remedy by mandatory injunction may be properly allowed. Henderson County Board of Health v. Ward, Judge, etc., 54 S. W. 725, 21 Ky. Law Rep. 1193.''

In Turner v. Hampton, 30 R. 179, the appellee had been employed in her absence from this state to teach the school in a country district for a term of six months, the contract of employment being properly signed by the trustees and for her by an agent having authority to write her name thereto. Being detained by floods she was unable to reach this state and the district where the school was to be taught on the date fixed by the contract for the beginning of the term. She, however, wired one of the trustees of the situation, and reached the school two days after the day fixed for the term to begin. While thus detained the trustees made a contract with another teacher to take the school, and for this reason the appellee was refused the right to take charge of the school upon her arrival. She thereupon brought an action and obtained a temporary injunction, under which she taught the school pursuant to the contract. On final hearing the circuit court perpetuated the injunction, and the teacher with whom it was attempted to supplant the appellee, took an appeal. On the appeal the judgment was affirmed, the Court of Ap-

peals holding that: "On the facts of the case, injunction was the proper remedy, as in no other way could the plaintiff obtain adequate relief."

In Grant County Board of Control v. Allphin, 152 Ky. 280, it was held that a court of equity has jurisdiction to enjoin a breach and thus indirectly compel specific performance of a contract, notwithstanding a covenant in the contract to pay liquidated damages upon its breach, if, from the contract and the circumstances surrounding its execution, it appears that the performance of the contract wa. intended, and not to give to the covenantor the option either to perform or to pay the stipulated damages; and also that the remedy at law was inadequate. Allphin seemed to have entered into a contract with the board of control, under the provisions of which he agreed to pool his crop of tobacco raised in the year 1909. Allphin undertook to sell the tobacco to another purchaser, and the injunction was obtained to prevent such sale and compel performance of the contract he had made with the Grant County Board of Control. The decision of the case by the Court of Appeals was not, as claimed by counsel for the defendants, rested wholly upon the statute authorizing the pooling of tobacco, then in force in the state, but which was later declared invalid by the Supreme Court of the United States. But if this were true, as claimed, the invalidity of the statute would not abrogate the equitable principle declared by the opinion, and upon which the court based its decision, that the breach of the contract threatened was one that under the circumstances could not be measured in damages. The equitable doctrine in question would seem to apply to any contract, in the absence of a statute, if its character and the circumstances surrounding its execution are such as to make it manifest that its performance is the essential thing intended, and not to give the covenantor the option either to perform or to pay the stipulated damages; and also that the remedy at law would be inadequate. The remedy by injunction allowed in Grant County Board of Control v. Allphin, *supra*, was not conferred by the statute under which the latter pooled his tobacco, but was granted solely because of the inadequateness of any other remedy that might have been invoked. It must be conceded that the opinion went a step further in its application of the doctrine in ques-

tion than any other decided in this jurisdiction; but it
is unnecessary to carry it to the same length in the in-
stant case, as it is only necessary to apply it therein to
the extent of preventing a transfer or other disposition
by the defendants of the property in controversy, until
such time as the case may be prepared and heard upon
its merits.

Under the authorities, *supra,* plaintiff's right.to the
injunction granted by the circuit court, in so far as it
affects the defendant, McClary, seems to be free of
doubt.  It is manifest that the grounds alleged in the
petition, and supported by the affidavits in the record,
are such as authorize an injunction.  They show the
breach of the contract, the insolvency of the defendant,
McClary, the inadequacy of any other remedy, the prob-
ability of a multiplicity of actions, and the irreparable
loss to which the plaintiff would be subjected if denied
the injunction.

Nor is any sound reason perceived for holding that
the injunction should not be made to apply to the de-
fendants, Buckner and Gaston, Williams & Wigmore.
They do not occupy the position of innocent purchasers.
According to the allegations of the petition and the evi-
dence furnished by the affidavits used on the application
for the injunction, they had full knowledge that the to-
bacco they attempted to purchase from McClary had
previously been sold to the plaintiff.  Obviously, the in-
junction would afford plaintiff no relief if merely
granted against the defendant, McClary, as the defend-
ants, Buckner and Gaston, Williams & Wigmore, would
continue to obtain from McClary or the farmers or
dealers of whom McClary purchased it, the tobacco
claimed by plaintiff under its contract with him.

We are aware that in Chambers & Marshall v. Bald-
win, 91 Ky. 121, and other cases cited on the brief of
defendants' counsel, it was held that one party to a con-
tract cannot maintain an action against a third person
who even maliciously advised and procured the other
party to the contract to violate it, unless such person, by
coercion or deception, caused the violation of the con-
tract by the other contracting party against his will or
contrary to his purpose.  But in that case the action
was brought, not, as here, to prevent the violation of
the contract induced by a third party, but to recover
of the latter damages for his malicious interference

with the contract. In the instant case no damages are sought against Buckner or Gaston, Williams & Wigmore; it is merely sought to enjoin them from interfering with the contract between plaintiff and the defendant, McClary, upon the ground that such interference was malicious, or at least, in bad faith, done with full knowledge of the plaintiff's rights under the contract; and that damages that might be recovered by the latter of McClary in an action at law, because of his insolvency, would not afford an adequate remedy. In such state of case relief by injunction has been allowed in other jurisdictions; Beekman v. Masters (Mass.), 11 L. R. A. (N. S.) 201; American Law Book Co. v. Edward Thompson Co., 84 N. Y. Supp. 225; Flacus v. Smith, 199 Pa. 133; Newport v. Newport Light Co., 84 Ky. 166; Wilkins v. Somerville (Vt.), 66 Atl. 893; New York Phonograph Co. v. Edison, 110 Fed. 26. The doctrine was also recognized in this jurisdiction in Turner v. Hampton, *supra*, wherein it was held that not only was injunction the proper remedy to prevent the violation by the trustees of a school district of a contract whereby they had employed the plaintiff to teach the school therein, but also to restrain another from teaching it under a later contract with the trustees.

The alleged interference upon the part of Buckner and Gaston, Williams & Wigmore with the rights and business of the plaintiff, though begun, has not progressed far enough to wholly deprive the latter of the benefit of its contract with McClary. Unless they are restrained, however, from further interference with the contract, plaintiff will shortly be entirely deprived of any benefit thereunder, which condition, together with the fact that plaintiff is without an adequate remedy at law, makes the relief here sought the only available means of protecting itself against irreparable loss.

An instructive case on this question is that of American Law Book Co. v. Edward Thompson Co., *supra*. An injunction was issued to restrain a law publishing house from inducing and attempting to induce subscribers to the publication of a rival law publishing house to violate their contracts by refusing to continue their subscriptions to certain of its publications. It was contended by the defendant that the plaintiff had an adequate remedy at law, and an action for damages for each contract broken by the action of the defendant;

that the party to each of such contracts had the right to break it and pay damages; and that what the party himself could thus do, another might do for him without restraint by injunction. In denying this contention and sustaining the plaintiff's right to an injunction, the court said:

"The fraudulent intent, followed to fruition in the actual inducement of persons dealing with the plaintiff to break their contracts for the intended benefit of the defendant and to the intended injury of the plaintiff, is the basis of the defendant's wrong; a wrong which our system of remedial justice recognizes as the subject for relief . . . . That an action for damages would not afford an adequate remedy is obvious. The loss of business and the injury to business reputation resulting from the defendant's act of obstruction, and from the consequent litigation between the plaintiff and its delinquent subscribers, could not be estimated nor proven with any degree of certainty for the purposes of a recovery; nor could the plaintiff properly estimate the additional burden of the future litigation with subscribers, whose defense would (as is to be inferred from the past) be conducted by the defendant at great pains and expense, bearing no relation to the amount of the claim, but solely in the interest of obstruction, and for advertising purposes. The invasion of a legal right being apparent, and the inadequacy of relief at law being clear, a case for injunctive relief is made out."

It is admitted in the instant case by all the defendants that the tobacco in controversy is the same or a part of the same tobacco the defendant, McClary, sold plaintiff, but denied that the defendants, Buckner or Gaston, Williams & Wigmore, or either of them, had knowledge of such sale when they purchased the tobacco of McClary. As previously stated, the evidence introduced by plaintiff on the application for the injunction showed such knowledge on the part of Buckner and Gaston, Williams & Wigmore; but the issue made by their denial of such knowledge, as well as those raised by the other grounds of defense interposed by the respective answers of the defendants, can only be finally determined after the taking of proof by the parties and upon a trial of the case upon its merits. For these reasons the contention of defendants that the indefiniteness of the option and contract referred to renders them or

either of them incapable of enforcement is not now passed on, further than to say that upon their face and the allegations of the petition they, together, appear to present a contract *prima facie* valid. At any rate, they seem more definite in every feature than was the contract enforced in Grant County Board of Control v. Allphin, *supra*, which embraced Allphin's crop of tobacco raised in the year 1909, without otherwise describing it or giving the quality or quantity. The option and contract are also substantially as definite as that in Mitchell Taylor Tie Co. v. Whittaker, 158 Ky. 651, evidencing the sale of a lot of ties, which though it only described in a general way the territory from which the ties were to be produced, was held to be sufficiently definite and certain to be enforced.

For the reasons herein indicated the motion of the defendant, McClary, to dissolve the temporary injunction so far as it affects him, is overruled, and the injunction as to him permitted to remain in force, and the motion of the plaintiff to reinstate the injunction dissolved by the lower court as to the defendants, Buckner and Gaston, Williams & Wigmore is sustained and the injunction reinstated as to them.

The six other judges of the Court of Appeals considered this case with me, and all concur in the conclusions expressed in the opinion.