TOBACCO GROWERS CO-OPERATIVE ASSOCIATION, A CORPORATION, V.
L. C. POLLOCK, BILL LOFTIN, FURNEY GREEN, ALLEN BROWN,
RALPH HADDOCK, JOSEPH BROWN, SENUS HILL, CHARLEY
BROWN, LEON PARKER, AND LEE PERKINS.

(Filed 19 March, 1924.)

**1. Injunction—Equity—Co-operative Marketing Association—Contracts—
Breach.**

In a suit by a coöperative tobacco association, formed under the pro-
visions of Public Laws 1921, ch. 87, seeking injunctive relief against its
member for disposing of his tobacco elsewhere than through the plaintiff
corporation, in violation of his contract, authorized by the statute, and in
collusion with his codefendant, a tobacco warehouse association, in fraud
of the plaintiff's contractual rights, an answer of the defendant member,
admitting that he had so disposed of his tobacco, and seeking rescission of
his contract upon allegation of the plaintiff's fraud and mismanagement
and failure to make the returns upon sales of tobacco it had theretofore
handled for the member defendant, etc., raises an issue vitally affecting
the business of the plaintiff, an adverse decision being likely to work an
irreparable injury, and the temporary restraining order theretofore
granted should, upon sufficient evidence, be continued to the hearing.

**2. Same—Remedy at Law—Liquidated Damages.**

The fact that the coöperative marketing contract provides for liqui-
dated damages does not give the association an adequate remedy at law
for its members otherwise selling their tobacco as provided in the market-
ing contract, as such would seriously menace the existence of the associa-
tion for the purposes for which it was incorporated under the provisions
of the statute (chapter 87, Public Laws 1921).

THESE two cases were consolidated, and the plaintiff appealed from
a judgment of *Horton, J.,* vacating a restraining order at Fall Term,
1923, of JONES.

The plaintiff, a corporation organized under Public Laws 1921, ch.
87, alleged that plaintiff and defendants had mutually executed a mar-
keting agreement by the terms of which the defendants had agreed to
sell and deliver to plaintiff all the tobacco produced by or acquired by
them as landlords or lessors during the years 1922, 23, 24, 25 and 26;
that they had produced and acquired a quantity of tobacco grown in
1923 and had sold a large part of it to persons other than the plaintiff,
and had determined to deliver no more to it, and that the plaintiff is
entitled to recover at the rate of five cents a pound for the tobacco so
disposed of as liquidated damages.

The plaintiff further alleged that the Farmers Warehouse Corpora-
tion was conducting a warehouse in Kinston and was engaged in the
business of selling tobacco at auction for a commission; that for the
purpose of destroying the plaintiff's business the defendant corpora-

tion had conspired with the other defendants, and had induced them to violate their marketing agreement and to agree to sell their tobacco to said corporation, with knowledge that the individual defendants were members of the plaintiff association, and that the defendant corporation at the time of the acts complained of was not, and is not now, the *bona fide* owner of the tobacco produced by the individual defendants.

The defendants in the first suit admitted they had signed a paper-writing, but alleged that its execution was induced by fraud in that (*a*) the plaintiff had falsely represented that it should not be effective until 60 per cent of the tobacco growers in Virginia, North Carolina, and South Carolina had signed an identical contract; (*b*) that if the defendants signed such contract they should be paid 50 to 60 per cent of the market value of their tobacco at the time it was delivered and the remainder within a reasonable time; (*c*) that for the tobacco delivered a certificate should be issued which could be used as a security for loans, and (*d*) that the expenses incident to the operation of the plaintiff's business should be economical and that the defendants should get a better price than the open market offered.

These defendants further alleged that they had not received more than one-half the value of the tobacco delivered to the plaintiff in 1922 and could get no satisfactory information as to when another payment would be made, and that in 1923 they delivered to the plaintiff a quantity of tobacco for which they had received not more than $33\frac{1}{3}$ per cent of its market value. They alleged that the plaintiff's disregard of its obligation entitled them to a rescission of their contract, and for this reason they had determined to make no further delivery to the plaintiff and to litigate the question of their right to make sale to the warehouse.

The Warehouse Corporation filed an answer denying the material allegations of the complaint, especially that it had entered into a conspiracy with the other defendants, and alleged that it had purchased certain tobacco from the defendants in good faith.

His Honor vacated the temporary restraining orders and required the defendants to execute a bond in the sum of $2,000 to indemnify the plaintiff as provided by the statute, and the plaintiff excepted and appealed.

*Burgess & Joyner and Duffy & Day for the plaintiff, appellant.*
*Aaron Sapiro, E. L. Hayes and T. E. Bowen of counsel for plaintiff.*
*John G. Dawson and T. D. Warren for Pollock et al., appellees.*
*Cowper, Whitaker & Allen for the Warehouse Corporation.*

ADAMS, J. The only question for consideration is whether the restraining order should have been continued to the final hearing, and the rule by which the question is to be determined has often been stated. As now accepted and enforced, the rule is said to have been formulated upon the distinction between common and special injunctions, the former of which were issued in suits brought to restrain an action at law or to enjoin the collection of a judgment recovered in a court of law, and were usually dissolved upon a full denial of the equity set up in the bill. However, the change of procedure by which legal and equitable demands may now be tried in the same court and all equitable defenses made in the original action led *Mr. Justice Rodman* to remark, "It is difficult to conceive how a case for common injunction can ever arise." *Jarman v. Saunders,* 64 N. C., 367. As to special injunctions it is otherwise. In *Cobb v. Clegg,* 137 N. C., 153, *Mr. Justice Walker* said: "In the case of special injunctions the rule is not to dissolve upon the coming in of the answer, even though it may deny the equity, but to continue the injunction to the hearing if there is probable cause for supposing that the plaintiff will be able to maintain his primary equity and there is a reasonable apprehension of irreparable loss unless it remains in force, or if in the opinion of the court it appears reasonably necessary to protect the plaintiff's right until the controversy between him and the defendant can be determined. It is generally proper, when the parties are at issue concerning the legal or equitable right, to grant an interlocutory injunction to preserve the right in *statu quo* until the determination of the controversy, and especially is this the rule when the principal relief sought is in itself an injunction, because a dissolution of a pending interlocutory injunction, or the refusal of one, upon application therefor, in the first instance, will virtually decide the case upon its merits and deprive the plaintiff of all remedy or relief, even though he should be afterwards able to show ever so good a case." It will be observed that the relief demanded in the present case is an injunction pending the action against the sale or other disposition of tobacco in breach of the standard agreement, to the end that the plaintiff may enforce specific performance of the contract. *Purnell v. Daniel,* 43 N. C., 9; *Heileg v. Stokes,* 63 N. C., 612; *Jarman v. Saunders, supra; Tobacco Co. v. McElwee,* 94 N. C., 425; *Tise v. Whitaker,* 144 N. C., 508; *Stancill v. Joyner,* 159 N. C., 617; *Sanders v. Ins. Co.,* 183 N. C., 66.

The marketing agreement contains these provisions: "(a) Inasmuch as the remedy at law would be inadequate, and inasmuch as it is now and ever will be impracticable and extremely difficult to determine the actual damage resulting to the association should the grower fail so to sell and deliver all of his tobacco, the grower hereby agrees to pay

to the association for all tobacco delivered, consigned or marketed or withheld by or for him, other than in accordance with the terms hereof, the sum of five cents per pound as liquidated damages, averaged for all types and grades of tobacco, for the breach of this contract; all parties agreeing that this contract is one of a series dependent for its true value upon the adherence of each and all of the growers to each and all of the said contracts. (*b*) The grower agrees that in the event of a breach or threatened breach by him of any provision regarding delivery of tobacco the association shall be entitled to an injunction to prevent breach or further breach thereof, and to a decree for specified [specific] performance hereof; and the parties agree that this is a contract for the purchase and sale of personal property under special circumstances and conditions, and that the buyer cannot go to the open markets and buy tobacco and replace any which the grower may fail to deliver."

The defendants contend not only that they were fraudulently induced to execute the agreement but that the plaintiff has failed to comply with its contract, and that they may therefore insist upon rescission and sell their tobacco without incurring liability to the plaintiff. With respect to these contentions, the pleadings raise issues of fact concerning which the Court expresses no opinion; but the plaintiff sets up an unlawful collusion or conspiracy of the defendants to defeat its rights under the agreement and in effect an attempt to destroy its business. The individual defendants admit their purpose to deliver no more tobacco to the plaintiff and to refer their legal rights to adjudication. All the defendants are therefore brought directly within the principle established in *Tobacco Assn. v. Patterson, ante,* 252; *Tobacco Assn. v. Battle, ante,* 260; *Tobacco Assn. v. Spikes, ante,* 367, in reference to which *Mr. Justice Hoke* said: "In those cases defendants had denied their membership and were in an attitude of resistance towards the contract and any and all of its obligations, and in such case, in our opinion, the writ was required to conserve and protect the rights of the plaintiff pending litigation." *Tobacco Assn. v. Bland, ante,* 356.

The defendants contend that the judgment should be affirmed because the damages are liquidated by the terms of the contract and therefore not irreparable, and that the plaintiff has an adequate remedy at law; but if this argument be approved it may be invoked by all members of the association who, after signing the standard contract, see fit to sell their tobacco on the open market—a condition which would probably result in the destruction of the association or the disintegration of its business. The very purpose of the organization is to stabilize the price of tobacco by promoting coöperation in selling, and its purpose would be defeated by granting to the members immunity from all liability beyond the payment of liquidated damages. In *Coöp. Assn.*

*v. Jones,* 185 N. C., 265, the *Chief Justice* observed: "Damages, of course, are of no real value. The association must have crops to market or it will go out of business; therefore relief in equity is provided, and it is an essential point in this case."

During the argument here the defendants filed an affidavit to the effect that after the dissolution of the restraining order the crop of 1923 had been sold by the defendant corporation, and that none of it was then in the hands of either of the defendants. The affidavit does not appear in the record and is no part of the case on appeal. Besides it is not, in our opinion, a full and sufficient disclosure of all the facts and circumstances relating to the alleged sale, particularly when considered in connection with the allegations contained in the tenth, eleventh, and twelfth paragraphs of the answer filed by the individual defendants. Whether the tobacco may be restored we cannot determine, but the plaintiff contends that all the crop of 1923 has not been disposed of and seeks to enjoin the disposition in breach of the contract of any crop hereafter to be produced. However this may be as to the present crop, even if we should consider the affidavit made by the president of the defendant corporation as a part of the record, we think the principle controlling upon this question is clearly given by the Court in *S. v. Scott,* 182 N. C., 865, 882: "It is argued that this case is like that where the tree was cut down, after the restraining order against felling it had been vacated. *Harrison v. Bryan,* 148 N. C., 315, and these additional cases are cited, supposedly to the same effect. *Pickler v. Board of Education,* 149 N. C., 221; *Wallace v. Wilkesboro,* 151 N. C., 614; *Moore v. Monument Co.,* 166 N. C., 211. But they do not apply to this case, as the facts are not the same. In *Harrison v. Bryan, supra,* the tree had fallen under the stroke of the axe, never to rise again. It could not grow again after it had been destroyed. It had died and was therefore beyond restoration. This was a fact established, and not even a mandatory injunction could change it. But here the act of the defendants may be repeated, it at least is possible for them to do so, and the plaintiffs are not bound by their declared intention not to repeat their mistake. The law will strip them of the power to do so by its restraining process."

The order of his Honor dissolving the restraining order is reversed and the injunction is continued to the final hearing.

Reversed.