## No. 11,594.

FORT, ET AL. v. CO-OPERATIVE FARMERS' EXCHANGE.

Decided May 9, 1927.

Action in injunction and contempt. Injunction granted and plaintiff in error Fort found guilty of contempt.

*Affirmed.*

1. INJUNCTION—*Temporary Restraining Order—Notice.* The general rule is that one who applies for a writ of injunction must give notice to the opposite party. The Colorado Code provision for a temporary restraining order without notice is an exception to the general rule.

2. *Restraining Order—Affidavits.* Two positive affidavits sustaining a verified petition held sufficient for the issuance of a temporary restraining order under the Code on filing emergency bond.

3. *Marketing Associations—Contract.* Petition by a marketing association with affidavits, alleging attempts to induce its members to break their contracts with the association, held to warrant the issuance of a temporary restraining order without notice.

4. *Restraining Order.* Courts should require strict and clear showing of an emergency before issuing a restraining order without notice.

5. *Practice and Procedure.* Objection of defendants in an injunction proceeding to the sufficiency of the showing of an emergency may be treated as a motion to dismiss the action and for judgment on the emergency bond.

6. *Temporary Restraining Order—Burden of Proof.* Sufficient verified petition and supporting affidavits authorizing the issuance of a temporary restraining order, held to sustain the burden of proof, if on plaintiff, showing an emergency existed, defendants offering no evidence.

7. MARKETING ASSOCIATIONS—*Legislation.* The legislature has power to make solicitation from, and interference with, members of a cooperative marketing association by another, actionable civilly.

8. INJUNCTION—*Business Interference.* Property right in a lawful business may be protected by injunction from unlawful interference causing irreparable injury by tending to destroy the custom, credit and profits of the owner.

9. *Evidence.* Court held justified in issuing an injunction on evidence elicited from defendants on cross-examination.

10. CONTEMPT—*Review.* In review by writ of error of a contempt judgment, the Supreme Court will not interfere further than to ascertain if the court below had jurisdiction and regularly pursued the practice and procedure to be observed in such cases.

11. *Jury Trial.* There was no error in denying defendant in a contempt proceeding a jury trial.

12. CONSTITUTIONAL LAW—*Contempt—Jury Trial.* Colorado Code section 363 in so far as it provides for a jury trial in contempt cases, held invalid as interfering with the courts in the exercise of their constitutional jurisdiction.

*Error to the District Court of Weld County, Hon. Robert G. Smith, Judge.*

Messrs. ALLEN, WEBSTER & DRATH, for plaintiffs in error.

Mr. DONALD C. McCREERY, Mr. HUBERT D. WALDO, JR., for defendant in error.

*Department Two.*

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff in error Fort, doing business under the name of the Celeryvale Farm, and Philip Yoon, his em-

ployee, have sued out this joint writ of error to review preliminary and final joint injunction orders against both of them and a several judgment imposing a fine of $25 on Fort alone for contempt of the district court of Weld county. The fine was imposed for a violation by Fort of a temporary restraining order issued by the court without notice in an action pending therein, wherein the plaintiff, The Co-operative Farmers Exchange, a Colorado corporation organized under our co-operative marketing act, had brought the action against Fort, and his employee Yoon, plaintiffs in error, to restrain them, and the court did temporarily restrain them, from inducing or attempting to induce the breach of, or interfering in any manner whatever with, the marketing contracts between the plaintiff exchange and its members, or any thereof, and from interfering in any. manner whatever with such business or affairs of the plaintiff, and particularly from buying or attempting to buy, or receiving or attempting to receive, any cabbage from any persons known by them to have marketing contracts with the exchange. Such further facts as are necessary to an understanding of the controversy will be referred to later in the opinion.

The objections and assignments of error by plaintiffs in error may thus be summarized: (1) The temporary restraining order without notice was improperly issued; (2) the trial court had not jurisdiction to issue either the temporary restraining order, the later temporary injunction, or its permanent injunction granted upon final hearing; (3) the evidence is not sufficient to support a permanent injunction; (4) neither of the plaintiffs in error was guilty of contempt; (5) the court committed error in refusing upon their request the demand of the defendants for a jury trial, whether they were or were not guilty of a violation of the injunction order.

Preliminary to the discussion of these assignments it should be said that this writ of error is a joint, not a separate, writ. Seasonably and before the time for the

filing of briefs under our rules had arrived, the defendant in error filed a motion to dismiss the writ of error upon the ground that a joint writ of error by two or more does not lie to review a separate judgment or decree against one only, since each defendant is interested or concerned, if at all, only with that judgment against him alone and not the judgment against the other, citing *McKnight v. McKnight,* 49 Colo. 60, 111 Pac. 583. We then declined to pass upon the motion of defendant in error to dismiss, or upon the application of the plaintiffs in error to amend their assignments of error so as to make them both joint and several, and reserved ruling thereon till final hearing. Without intimating now whether the plaintiff in error Fort, as matter of right, is entitled to a hearing in this joint writ, as to the contempt judgment against him alone, we have concluded not to pass upon the objection since we have reached, and are satisfied with, our conclusion on the merits, that the several judgment imposing the fine on Fort, and the joint injunction decree against both plaintiffs in error are, and each of them is, right and should be affirmed.

(1) The general rule, and it is recognized by our Code of Procedure, is that one who applies for a writ of injunction must give notice to the opposite party. Section 165 of our Code contains an exception thereto and provides that if complainant shall give a prescribed emergency bond, and shall file an affidavit by himself or his representative and by not less than two other persons, showing that irreparable mischief or injury will result to him, if notice be given, and further states matters which are not material in the present case, the court or judge shall have power to grant a temporary restraining order to remain in force only until plaintiff can have his application heard. Plaintiffs in error here contend that the emergency or restraining order without notice was improperly issued upon several grounds. They say that, though the representative of the plaintiff corporation had, by his affidavit verifying the complaint, satisfied one

of the requirements of the section, the two sustaining affidavits as to the irreparable mischief were on information and belief of the affiants and not positive and direct as the section contemplates.  Whether or not the two designated sustaining affidavits are insufficient because not positive and direct, but only on information and belief, we need not determine because four sustaining affidavits were made and filed and the other two are positive and direct in their statements and clearly sufficient as against the objection urged.  Plaintiffs in error are not altogether fair, at least not accurate, in their abstract of the record in saying that these two positive affidavits, which we have held a sufficient compliance with the Code, are the same as the two alleged insufficient affidavits on information and belief.  That is a misstatement.  The abstract does not purport to contain the contents of these two sufficient affidavits, but we have examined the transcript of the record and find the criticism of them by learned counsel is not well founded.  They are positive and direct.  As to form and substance there were a sufficient number of affidavits to meet the requirements of the section.

Plaintiffs in error also say that the affidavits do not show that irreparable injury would result if notice of the application for the temporary restraining order was made.  We think this also is a misconception.  The allegations of the duly verified complaint and the supporting affidavits, in substance, are in this particular that Fort, a large and rival dealer in cabbage in that region, and Yoon, his employee, unlawfully, deliberately and with malicious intent at certain specified times and at divers times thereafter, and up until the filing of the complaint, induced, or attempted to induce, and interfere with the performance of the marketing contracts which the plaintiff exchange had made with its many members, known by defendants to be such, for the purchase and marketing of cabbage, and that they are, and for sometime past have been, soliciting and attempting to induce such mem-

bers of the exchange to break and breach their several marketing contracts and to sell and dispose of their cabbage, directly or indirectly, to the defendant Fort, and that Fort has contracted, and is now contracting and purchasing cabbage from members of the exchange, well knowing that the same was contracted to the exchange under and by virtue of the marketing contracts, which acts and practices of the defendants were calculated and intended to cause, and were causing, dissatisfaction and discontent among members of the exchange, and intended to impair, and were impairing and destroying the business of the exchange, to its great and irreparable injury. At this time the early cabbage crop in Weld and Adams counties, where the exchange was operating, was then maturing and being marketed. Specific instances of such acts and conduct of the defendants are set forth in the complaint and the affidavits. The affidavits further state that the defendants were continuing maliciously and falsely to represent to the members of the exchange and others that the officers and agents of the exchange were not dependable or trustworthy, and that prices paid by it were inadequate; all of which were intended and were calculated to foment and cause dissatisfaction and discontent, and ultimately to destroy the exchange. Coupled with these and similar allegations were statements that the emergency was not the result of the creation or connivance of the exchange or any of its members, and that the suit was commenced at the earliest time it could be instituted after learning the facts.

We have thus stated some of the material allegations of the complaint and the sustaining affidavits because they show clearly, if true, that the necessary emergency existed; that it was not brought about by the connivance of the plaintiff; that irreparable injury would result or might result by the giving of notice. In other words, we think the complaint, together with the sustaining affidavits, show a sufficient compliance with the requirements of the statute and the granting of the temporary restrain-

ing order, in the circumstances, was justified. The court certainly had jurisdiction of the subject matter and we think the showing made for the temporary order was ample. The early cabbage season was a short one. The business at that time was most profitable and quick action had to be taken by the plaintiff to protect itself against the unlawful acts of the defendants. Action was taken as soon as definite and positive information was obtained by the plaintiff thereof. It is true that such restraining order without notice is not lightly to be issued and the courts require strict and clear showing of the emergency which warrants the exercise of the strong power of the court. The assignment of error on this ground is not well taken.

Complaint is made by the defendants that the court, when the application for a temporary injunction was made, improperly placed upon them the burden of proof upon the issue of the existence of an emergency at the time the previous temporary restraining order was entered. The trial court considered this objection of the defendants to the sufficiency of the showing upon the issue of emergency as a motion to dismiss the action and for judgment on the emergency bond. Under the doctrine of *Sedgwick v. Sedgwick,* 50 Colo. 164, 114 Pac. 488, Ann. Cas. 1912C, 653; *Kirby v. U. P. R. R. Co.,* 51 Colo. 509, 119 Pac. 1042, Ann. Cas. 1913B, 461, the court might treat, and here properly did treat, the defendants' objection as a motion of that character. There was no offer or attempt by the defendants at the trial of such issue, to produce evidence tending to show that an emergency did not exist at the time the restraining order passed. The defendants, as has already been stated, deeming the verified allegations of the complaint and the sustaining affidavit insufficient to justify the issuing of this temporary order did not, apparently for that reason, introduce any such evidence. As we have already determined that the necessary affidavits were filed that justified the trial court in issuing the restraining order, it necessarily

follows that the court, in issuing the same, and confirming it in granting a temporary injunction, did not abuse its discretion but acted in accordance with the letter and spirit of the statute. We fail to discover how there could be, in such circumstances, any error on the part of the court in issuing the temporary writ of injunction, if there was no error in making the ex parte restraining order. Even if the burden of proof was not on the defendants but on the plaintiff, that burden, as we have said, was sustained and defendants have no ground of complaint.

(2) The next general assignment argued is that the trial court was without jurisdiction to issue either the temporary restraining order, the later temporary injunction, or the permanent injunction upon final hearing. Section 28, Chap. 142, S. L. 1923, reads that any person who knowingly induces or attempts to induce any member or stockholder of a marketing corporation organized under our law, to break his marketing contract with the association, shall be guilty of a misdemeanor and be subject to a fine. Such acts are therefore unlawful. Counsel argue at considerable length that this section makes of the acts described a penal offense, a legal wrong, and that cannot be unless at least the act was accompanied by malice. The allegations of the complaint in this case are that the acts were done maliciously and with evil intent. We think the legislature had the power, and properly exercised it, to make such solicitation and interference with the plaintiff exchange and its members, actionable civilly, and that plaintiff has properly pleaded a cause of action based upon the statute, and, if violated, the penalties imposed may be enforced. It is true that the statute does not use the word "maliciously," but it uses the word "knowingly." The allegation of the complaint is that defendants were deliberately interfering with the business of the exchange, and particularly that they were inducing, or attempting to induce, members thereof to breach their marketing contracts with it. One

who carries on a lawful business has a property right therein and is entitled to protection against unlawful interference therewith, and such interference may be prevented by injunction. Whether or not such unlawful acts are criminal is not a question here. This is a civil, not a criminal, action. *Kirby v. U. P. R. R. Co., supra; Beekman v. Marsters,* 195 Mass. 205, 80 N. E. 817, 11 L. R. A. (N. S.) 201, 122 Am. St. Rep. 232, 11 Ann. Cas. 332; *Friedberg v. McClary,* 173 Ky. 579, 191 S. W. 300, L. R. A. 1917C, 777; *Potato Growers Ass'n v. Smith,* 78 Colo. 171, 240 Pac. 937.

The latter case, we think, in and of itself, is authority for the maintenance of the present action. Since the right to carry on a lawful business without obstruction is a property right, acts committed without just cause or excuse, which interfere with the carrying on thereof and destroy or tend to destroy the custom, credit and profits of one engaged therein, do an irreparable injury and authorize the issuance of injunction. 32 C. J. p. 155, sec. 209, and cases there cited; *Kirby v. U. P. R. R. Co., supra; Ward v. Colorado E. R. Co.,* 22 Colo. App. 332, 350, 356, 125 Pac. 567; *Del Monte Co. v. Chaffee County,* 24 Colo. App. 340, 133 Pac. 1048.

(3) The parties agreed upon the trial below that the matters that were offered in evidence at the time of the application for the temporary injunction, following the temporary restraining order, may be considered by the court in passing upon the permanent injunction, where the same are not hearsay and under the rules of law would be properly admissible. The affidavits in support of the temporary restraining order were not to be so used. Plaintiffs in error now argue that there was not sufficient evidence to warrant the granting of the permanent injunction. They say that the only evidence upon the final hearing, except such evidence as was considered by the court when the temporary injunction was granted, consisted of the testimony of the plaintiffs in error themselves, and they deny that they had ever interfered or

sought to interfere with the business between the exchange and its members. Even if it be conceded that there was no evidence on final hearing except the testimony of Fort and Yoon, we are constrained to say that the court was justified, upon the testimony elicited on their cross-examination, in its finding that the case as made by the complaint was established. It is unnecessary to go into detail as to the evidence. We have examined it with care and are satisfied that the permanent injunction was abundantly supported by the evidence. Authorities in favor of the right to maintain such an action upon the case as made by the evidence in this case, are the following, among others, that might be cited: *No. Wis. Co-Oper. Pool v. Bekkedal*, 182 Wis. 571, 197 N. W. 936; *Hollingsworth v. Texas Hay Assn.*, 246 S. W. 1068; *Tobacco Grow. Co-Op. Assn. v. Pollock*, 187 N. C. 409; 121 S. E. 763; *American Malting Co. v. Keitel*, 209 Fed. 351, 358; *Angle v. Chicago, St. Paul, etc., Ry. Co.*, 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55.

To sum up: The trial court was justified in finding from the evidence before it that the temporary restraining order, the temporary injunction, and the permanent injunction were properly made. Both in fact and in law the plaintiff was entitled thereto. It is clearly apparent that the defendants attempted to interfere with the business of the exchange and with its members, and that they knew that these persons, whom they tried to persuade to break their contracts with the plaintiff, were members. These three joint injunctive orders: restraining, temporary and permanent, were right, supported by the evidence, and authorized by law. We can not interfere with them or either of them.

(4) Passing, therefore, to the contempt judgment against Fort alone and assuming, but not deciding, that Fort, as matter of right, may have it reviewed in this joint writ of error, we say, first, that the petition or information and the affidavits in support show that a contempt, a civil contempt, was committed. It clearly ap-

pears therefrom that Fort's actions were designed and intended by him to, and did, interfere with, hamper and damage the exchange business with its members. These acts were in direct violation of the terms of the injunction order which restrained him from interfering with the business of the exchange. Such acts and conduct are clearly within the prohibition of the injunction orders. The affidavits are sufficient in form and in substance to justify the citation. *Guiraud v. Nevada Canal Co.,* 79 Colo. 289, 245 Pac. 485. The court observed the procedure applicable in contempt proceedings, as we have on many occasions defined that procedure. There was no departure from it in the present case. *Eykelboom v. People,* 71 Colo. 318, 326, 206 Pac. 388.

Learned counsel for plaintiffs in error, however, contend that this court on review will not stop with the inquiry as to jurisdiction of the court in a contempt proceeding, but will go further and examine the testimony to see if the evidence is sufficient to support the charges. That is really the substance of the contention, although the language in which the argument is set forth seeks to soften the assertion by saying that the matter is merely one of law as to whether or not any contempt was committed. They cite three cases in support of their contention that it is the duty of this court to examine the evidence to see if the trial court made correct findings upon it. These cases are: *Kilker v. People,* 68 Colo. 174, 188 Pac. 744; *In re Cottingham, et al.,* 66 Colo. 335, 182 Pac. 2; *Marians v. People,* 69 Colo. 87, 169 Pac. 155. Neither case sustains the assertion of counsel. It has been repeatedly decided by this court, beginning with *Hughes v. People,* 5 Colo. 436, and ending with the Guiraud case, supra, that in a review by writ of error of a contempt judgment, this court will not interfere further than to ascertain if the court below had jurisdiction in the premises and regularly pursued the practice and procedure to be observed in such cases. Notwithstanding this definite declaration by us in many cases,

learned counsel say in effect that we may go further and follow them in their discussion and review the evidence in the extended hearing before the court below for the purpose of determining its sufficiency to support the charge. The three cases which they cite are not what is claimed for them. In the Kilker case this court did not examine the evidence to see if it sustained the information or petition alleging contempt. The respondent in the Kilker case filed an answer to which the plaintiff's demurrer was sustained. This court on review held that as the demurrer admitted the facts set out in the answer, and as these facts showed no contempt was charged, and as no evidence whatever was taken, the judgment was reversed on the sole ground that the pleadings, not the evidence, affirmatively showed that the alleged contempt charged was not a contempt at all.

In the Marians case no evidence was taken. We held that the matters there alleged in the information or petition, which was supposed to constitute the alleged contempt, did not in law constitute a contempt. The decision there was solely confined to the question of jurisdiction. In the Cottingham case the alleged contempt was said to consist in malicious and wicked charges against a trial judge contained in a verified application for a change of venue. We said the affidavit was bad in that it did not contain an averment that the charges were false as well as malicious, which was necessary. There was no trial or finding of the trial court on that issue and no evidence at all was heard. We said for that reason alone the judgment of guilty must be and it was reversed. There are some statements in that opinion, clearly dicta, that might seem to indicate, in the writer's view, that this court on review would examine the evidence, but no such announcement was made. The real decision there was that the court was without jurisdiction; indeed, the Cottingham opinion cites with approval, *In re Smith,* 54 Colo. 486, 131 Pac. 277. In the Smith case the charges in the affidavit were denied. There was no hearing or finding

on that issue. The judgment of the court, just as in the
Cottingham case, was based entirely upon the pleadings;
that is, on the information and the denials of the answer.
The court rightly in those cases put the decision on the
ground that the court acted without, and beyond, its
jurisdiction. In neither the Cottingham nor the Smith
case was there any evidence at all. So that, no case in
this court has ever held that, in reviewing contempt
judgments, we act as trier of facts to ascertain the suffi-
ciency of evidence to support a contempt charge. Where
the trial court has jurisdiction and regularly pursues its
authority, and there is evidence of contempt, its decision
on the facts is conclusive. The petition and the affidavits
in this case unmistakably show that a contempt was com-
mitted. They also show that the court observed the pro-
cedure applicable in contempt proceedings as defined by
many previous decisions of this court. In case No. 11588,
*Fort v. The People,* etc., 81 Colo. 420, 256 Pac. 325, that
opinion, read in connection with this, clearly distinguishes
between a case, as that case is, where the petition and
affidavits on their face show no contempt is charged, and
a case like this one, where the pleadings charge a con-
tempt. In the former the court is powerless further to
proceed; in the latter it has jurisdiction to proceed to the
hearing and its finding of facts, upon the evidence that
is taken, is attended with the result hereinabove an-
nounced.

(5) Another objection, although apparently not urged
with entire confidence, is that the trial court committed
error in refusing the demand of Fort for a trial by a
jury. The demand for a jury trial was made but the trial
court denied it. We think the denial was proper. Sec-
tion 363 of our Code provides that in all cases where the
alleged contempt is not committed in the immediate view
or presence of the court or judge, the person arrested
may, upon demand therefor, be tried by a jury. The
statute does not say that he "shall" be tried by a jury
but "may" be. Assuming, however, that, as held in the

Michaelson case hereinafter cited, in a similar statute, "may" is used in the mandatory sense of "shall," we think, that by previous decisions of this court, and upon principle, the General Assembly has not the power to pass such a statute. The question is no longer debatable in this state. This is not a case of first impression with us, although this court in previous decisions has not specifically referred to this section of the Code. It was first passed in 1901. Before its passage, in *Cooper v. People, ex rel.,* 13 Colo. 337, and *Wyatt v. People,* 17 Colo. 252, we held that the district court is created and its jurisdiction is fixed by the Constitution; that by the express letter of that instrument it is given original jurisdiction of all causes, both at law and in equity. As part of that jurisdiction our district courts have the inherent plenary power to punish for contempts and have the same power that the common law courts of England possessed over contempts. In the Wyatt case, in an able opinion by Mr. Justice Helm, it was said: "Both the right to punish contempts and the power to proceed in a summary manner are essential to the performance of the very functions for which courts are created.  *  *  *  But if the proceeding for contempt could only be instituted by indictment or information, and if the accused were entitled to a trial by jury, it is obvious that great difficulty and delay would be occasioned in the transaction of ordinary judicial business, and the wise purpose of the power would in many instances be defeated. The framers of our Constitution never intended to thus interfere with the due and orderly administration of justice. It was not their purpose to have the procedure designated in the sections mentioned cover contempts of court, and thus give this class of offenses a *status,* theretofore unknown in either the statutory or the common law. The constitutional guaranties apply to such acts as constitute violations of public and general laws. They leave contempts, which are simply acts in disobedience of judicial mandates or process or which tend to obstruct the dignified

and effective administration of justice, to be dealt with in the summary manner theretofore universally followed.''

The Wyatt case, as stated, was decided before this Code provision was passed. In *People v. Tool*, 35 Colo. 225, 86 Pac. 224, 6 L. R. A. (N. S.) 822, 117 Am. St. Rep. 198, the opinion being rendered in September, 1905, after the Code section was enacted, although the opinion does not refer to that case, it was held that the right of trial by jury does not extend to charges for contempt. In *People v. News-Times Pub. Co.*, 35 Colo. 253, 84 Pac. 912, in an elaborate and able opinion by Mr. Justice Gunter, questions of contempt were thoroughly discussed and the opinion of this court in the Wyatt case was reviewed and quoted from at great length with approval. We thus have three cases of our own, one before, and two after, this Code section was adopted, and cases hereinafter cited, declaring that our district courts, being constitutional courts, cannot be hampered or restricted in the right to determine for themselves, without the aid of a jury, whether or not contempts of the court had been committed. *In re Debs,* 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092, it was held by the Supreme Court of the United States that to submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the contempt proceeding of half its efficiency. In *Eilenbecker v. Plymouth County,* 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801, the court held that a contempt, whatever its nature may be, either criminal or civil, is an offense against the court and against the administration of justice, for which courts have always had the right to punish the party by summary proceeding and without trial by jury. One of the strongest opinions in line with our own decisions is *Carter v. Commonwealth,* 96 Va. 791, 32 S. E. 780, 45 L. R. A. 310. Our Wyatt case is cited in 35 C. J. p. 194, and 24 Cyc. p. 146, to the proposition that in contempt proceedings the respondent is not entitled to trial by jury. The legislature may not, under the guise of regulating procedure, take away or

impair any part of the inherent constitutional power of our district courts. It would seem too plain for argument that to take away the power of the district court for itself to determine that a contempt has been committed would be something more than a mere regulation of procedure. It would, in effect, be an impairment or divestiture of the power of the court if the accused were given, as matter of right, a trial by jury as stated in the Wyatt case, and the wise purpose of the power which the Constitution gives to the court would in many instances be defeated. Error was not committed in denying the defendant a jury trial. Cooley's Const. Limit. (7th Ed.), 453, note 2, says: "Cases of contempt of court were never triable by jury; and the object of the power would be defeated in many cases if they were." In *Cooper v. People, supra,* we said, page 360: "No court has ever yet held that the right of trial by jury extends to contempt proceedings, and to thus decide would defeat the very object of the power." In the Guiraud case, supra, the same being our latest announcement on the subject, we said that the legislative branch of the government may not divest district courts of the power, or by regulation seriously interfere with them in the exercise of their constitutional jurisdiction to punish for contempt. It seems to us entirely clear that the legislative requirement, that one charged with civil contempt may as matter of right have a jury trial upon the issue, would seriously interfere with the courts in the exercise of their undoubted constitutional jurisdiction, and, therefore, this Code section is invalid. Counsel have not called our attention to *Michaelson v. United States,* 266 U. S. 42, 45 Sup. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451, in which it was held that it was competent for Congress to require, as it did under section 2 of the Clayton Act, any district court of the United States or any court of the District of Columbia, neither of which is a constitutional court, but a creature of the Congress, to grant a trial by jury "upon the demand of the accused in an independent proceeding

at law for a criminal contempt which is also a crime.'' The court expressly excluded civil contempts from this requirement. And it said that a criminal contempt, under the Clayton Act, is between the public and the defendant, is by the Act made an independent proceeding at law, and no part of the original cause. Hence prosecution therefor must be in conformity with the practice in criminal cases. The court recognized the inherent power of courts to punish for contempt, but said so far as the inferior federal courts mentioned are concerned, not constitutional courts, Congress may, where the act or thing constituting the contempt is also a crime in the ordinary sense, provide for a trial by jury. The court did not refer to the Debs or the Eilenbecker cases, supra, and other similar cases in which it had held that the first eight articles of the Federal Constitution apply to the powers exercised by the Government of the United States, whether by Congress or by the judiciary, and not as limitations upon the powers of the states. In the Eilenbecker case Mr. Justice Miller said that due process of law within the meaning of the Fourteenth Amendment did not deprive the state courts of the power summarily to punish as for a contempt, criminal or civil, without the aid of a jury. By agreement of the parties the question of the right of the respondent, on demand, to a trial by a jury in a contempt proceeding, was submitted to the court sitting en banc, and has been fully considered by all the justices. They are unanimous in the opinion that the Code section so providing is invalid for the reasons stated in the opinion.

Finding no prejudicial error in the record, the joint judgment as to both defendants, and the several judgment as to the contempt charge against Fort, are, and each of them is, affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.

All the Justices, sitting en banc, concur in the conclusion as to trial by jury.