Mr. Chief Justice Sutton
delivered the opinion of the Court.
The question for determination on this writ of error is whether plaintiff in error, J. F. Burt, an experienced optician, who is not a licensed physician, surgeon or optometrist, is guilty of contempt of court for allegedly violating a previously issued district court order on January 28, 1965, which reads in pertinent part as follows:
“It is, therefore, ORDERED, ADJUDGED AND DECREED by the Court that the Motion of the Plaintiff, The People of the State of Colorado, for a preliminary injunction be and the same is hereby granted and that the defendant, J. F. Burt, his agents, servants, employees, and all persons in active concert or participation with the defendant, be and they are hereby enjoined from directly or indirectly engaging in or continuing to engage in the practice of optometry, as defined by C.R.S. ’53, 102-2-4, and in particular from fitting or adapting contact lens to the human eye and from doing or performing any act or using- any optical instrument to or for the'purpose of fitting-or adapting contact *195 lens to the human eye, without first having a license to practice optometry issued by the State Board of Optometric Examiners of the State of Colorado.” (Emphasis supplied.)
Following a hearing, Burt was adjudged guilty and fined $250.
Though several grounds are urged as error, we need only consider two of them that are dispositive of the controversy, viz:
(1) Does the evidence support the finding by the trial court that the defendant violated the preliminary injunction? And,
(2) Is the injunctive order broader than the statute and thus void?
The record discloses that Dr. David A. Seifert, an optometrist, approached Burt in his place of business to discover whether the latter was violating the court order in question. Seifert stated that he was having difficulty with his contact lenses. Burt took the lenses to another room and soon returned saying they were “crazed.” He then had Seifert insert the lenses in his own eyes. Next, the defendant placed a dye known as fluoresciene in Seifert’s eyes and proceeded to look into them with a black light. He then stated that the lenses appeared to be both flat and beveled. This was followed by a comment that the ophthalmologist with whom he worked was absent and that Seifert would have to return to see that doctor at another time for an eye examination.
C.R.S. ’53, 102-2-2 to 4, in pertinent part and in effect when the injunction issued, forbade the practice of optometry by all except licensed optometrists; it then excluded Colorado licensed physicians and surgeons “and ancillary or technical assistants working under his direction, with the exception of the fitting of contact lenses which must be done under the physician’s or surgeon’s direct supervision.” Section 4 defined the practice of optometry as follows:
“The practice of the profession of optometry is the *196 examination and refraction of the human eye and its appendages, and the employment of any objective or subjective means or methods other than the use of drugs, medicine, surgery, x-ray, or any form of radiation, for the purpose of determining any visual, muscular, neurological, or anatomical anomalies of the eyes, and the prescribing and employment of any lenses, prisms, frames, or mountings or other ophthalmic materials or devices. Any person who is engaged in the prescribing of visual training or orthoptics, or the prescribing of contact lenses, or the fitting or adaptation of contact lenses to the human eye, or the use of scientific instruments to train the visual system or other abnormal condition of the eyes for the correction, relief, or aid to the visual function, or who holds himself out as being able to do so, is engaged in the practice of optometry.” (Emphasis supplied.)
We note that, as applied to the facts in the instant case, the only portion of the statute that might be applicable here is the prohibition against an unlicensed person like Burt fitting or adapting contact lenses to the human eye. We also note that the injunction itself forbids the use of any optical instrument or the performance of any act when done “for the purpose of fitting or adapting contact lenses to the human eye” unless prior thereto Burt became licensed to do so.
In our view, the learned trial court, under the facts presented, committed error in finding that Burt had violated its order and in adjudging him in contempt. We see nothing in the Act that prohibits an optician from examining and commenting on the physical characteristics of contact lenses. The evidence clearly shows that there was no prescribing or fitting or adapting of the lenses to Seifert’s eyes. Burt exercised no medical judgment by his acts and gave no medical advice. He was an experienced optician who operated under the supervision of a licensed ophthalmologist as demonstrated by his referral of Seifert to a doctor. His com *197 ments related merely to the physical characteristics of the lenses presented. Even Burt’s placing of the nonprescription dye in Seifert’s eyes and looking at the lenses when they were on Seifert’s eyeballs — so long as Burt did not attempt to do anything about what he saw — is not within the prohibition of either the statute or the injunction.
 It has been urged, in addition, that the order is so broad that it enjoins Burt from working as an ancillary or technical assistant under the direct supervision of a licensed person. Suffice it to say in this regard that the trial court did not have power to grant an injunction more restrictive in scope than the statute contemplates. A violation of a void portion of an injunction is not deemed to be contemptuous. People, ex rel Pomeranz v. District Court, 74 Colo. 58, 218 Pac. 742 (1923).
The People assert that on this writ of error the only authority residing in the reviewing court is to determine whether the trial court had jurisdiction. In this regard they rely on Wall v. District Court, 146 Colo. 74, 360 P.2d 452 (1961) and Fort v. Farmers’ Exchange, 81 Colo. 431, 256 Pac. 319 (1927). These authorities are not applicable to a proceeding in which there is no evidence to support a contempt conviction. Wall involved a contempt committed in the presence of the trial court; it was supported by facts in the record warranting summary treatment; and it also quoted from Fort. The latter case it seems does make the statement which counsel contends is the applicable law here. But even there some, evidence existed to sustain the. judgment; and further, the court there said that “Where the trial court has jurisdiction and regularly pursues its authority, and there is evidence of contempt, its decision on the facts is conclusive.” (Emphasis supplied.) Other statements in Fort which might be viewed as creating an impression that no evidence is necessary even though the court had jurisdiction, are clearly not the law and *198 could not be, for obviously no one should be punished in a contempt proceeding without evidence to support the conviction.
The judgment is reversed and the cause is remanded with directions to discharge the defendant.
Mr. Justice McWilliams dissenting, and Mr. Justice Frantz concurs in his dissent.
Mr. Justice Schauer, formerly concurring, now concurs in the dissent.